[Civ. No. 1075. Third Appellate District.—March 25, 1913.]

NORBET MATTES, Respondent, v. G. W. HALL, Appellant.

ADVERSE POSSESSION—ACQUISITION OF TITLE BY MARRIED WOMAN.—A married woman, without color of title, and not living apart from her husband, cannot acquire real property as her separate estate by adverse possession.

ID.—COLOR OF TITLE—CONSTRUCTIVE POSSESSION.—There can be no constructive possession without color of title.

ID.—CLAIM OF TITLE—KNOWLEDGE OF OWNER.—Possession to be adverse must be such that the owner of the property may have knowledge, or the means of knowledge, that there is possession adverse to him with intention to make title against him.

ID.—ESSENTIALS OF POSSESSION.—Adverse possession must be open, notorious, exclusive, continuous, and uninterrupted.

ID.—PRESUMPTION OF POSSESSION—INCLOSURE BY FENCE.—Where there is neither title nor color of title, there is no presumption of possession; it must be actual, and the inclosing of the land by a fence does not necessarily imply possession or occupation.

ID.—POSSESSION BY PASTURING STOCK—CONTINUOUS USE.—The testimony of one asserting title by adverse possession that he used the land "for pasturing stock," and "used it for pasture each year since he fenced it," does not justify the inference that he thus used it continuously during the pasturing season.

ID.—GRAZING STOCK—ADAPTABILITY OF LAND FOT THAT PURPOSE—CONTINUOUS USE.—If possession has been manifested exclusively by grazing stock, it should be made clearly to appear that such was

the use to which the land was adapted and customarily used, and the use should be shown to have been continuous and uninterrupted, at least substantially, during the grazing season of each year.

APPEAL from a judgment of the Superior Court of Modoc County.   Clarence A. Raker, Judge.

The facts are stated in the opinion of the court.

J. M. Cross, Maddux & Maddux, and F. O. Hoover, for Appellant.

F. M. Jamison, for Respondent.

CHIPMAN, P. J.—This case was submitted, as a companion case, with No. 1076, *Madden* v. *Hall,* this day decided. *ante,* p. 541, [132 Pac. 291].   The complaints in both cases were filed on the same day.   No. 1076 was tried on September 20, 1911, and No. 1075, the present case, on September 19, 1911.   Judgment was entered in both cases on October 24, 1911, and transcripts filed in this court February 5, 1912. In both cases title claimed by plaintiffs flows from an alleged adverse possession by Annie E. Madden, grantor of the present plaintiff.   The companionship of the cases resides in the similar facts in both,—namely: Mrs. Madden was, at the initiation of the alleged adverse possession, the wife of John Madden and still is, so far as appears; that she employed one James Campbell to take possession of the two tracts of land and perform the requisite acts for her to constitute adverse possession; that she had no title or color of title; that in both cases the land in question was placed in charge of Mrs. Madden's husband by the defendant, its owner, and the husband's agency and the permission given by defendant and his authority thus given, were never disavowed or repudiated; that the occupancy of the land was by Campbell only and the acts constituting adverse possession were performed wholly by Campbell except the payment of taxes, which was made by Mrs. Madden.

Plaintiff brings the action in ejectment as grantee of Annie E. Madden, by deed dated November 1, 1909, acknowledged November 17, 1909, more than five years after Mrs. Madden's

alleged adverse possession began, and the question of title was the real issue tried.

The court made findings of fact substantially as in No. 1076 —*mutatis mutandis*—as follows: That, on August 20, 1910, plaintiff was the owner, entitled to possession and was in the actual possession of the land in controversy and that, on said day, defendant wrongfully entered into possession thereof and ousted plaintiff therefrom and now withholds possession thereof from plaintiff; that, on May 19, 1892, a patent was issued to defendant to said land and he was on that date the legal owner thereof; "that on said last named date and at all times prior thereto said land and the whole thereof was unfenced, uninclosed and uncultivated wild land" and so continued to be until the spring of 1903; "and that in the spring of 1903 the immediate grantor of this plaintiff, Annie E. Madden, claiming to be the owner thereof, entered into the actual possession of said land and of the whole thereof, and inclosed the said real estate and the whole thereof with a substantial inclosure, constructed of substantial posts set firmly in the ground, and substantial fence constructed of barbed wire fastened to said posts, around the whole of said real estate, using good and substantial fences and inclosures along the east and south sides of said real estate, that had theretofore been constructed along the said east and south sides of said land, by the owners or occupants of adjoining lands," so that, by said fence as thus constructed, "the whole of the said land . . . was inclosed by plaintiff's grantor in the year 1903 with a good and substantial fence sufficient to turn cattle and other stock," and so continued to be up to the time plaintiff came into possession of said land as aforesaid.

"VI. That ever since the spring of 1903, to and until the plaintiff was ousted and ejected from said land by defendant as aforesaid, the said plaintiff and his said grantor had been in the open and actual and notorious possession of said land described in paragraph one of these findings and of the whole thereof, continuously during all of said period last named; and that the possession of said plaintiff and his said grantor during all of said last named period has been hostile to the whole world, and especially hostile to this defendant, and with notice to him of the claim of plaintiff's said gran-

tor, and this plaintiff to and possession of said last named land and the whole thereof.

"VII. That the possession of plaintiff and his said grantor of the last named land from the spring of 1903 to the date of the ejection and ouster of plaintiff by defendant from said land as aforesaid, has been actual, continuous, exclusive, and under claim of title to same and to the whole thereof, and during the whole of said last named period, to wit: from the spring of 1903 to the 20th day of October, 1910, the said possession of plaintiff and his said grantor of the aforesaid last named land, and the whole thereof, has been continuous, uninterrupted, peaceable, under claim of title thereto by plaintiff and his said grantor, and adverse to the whole world and especially adverse to said defendant." There is also a finding that the said Annie E. Madden paid all the taxes levied and assessed upon said land for three years 1903 to 1909, inclusive.

"IX. That plaintiff is the grantee of Annie E. Madden, of the said lands described in paragraph one of these findings; the said Annie E. Madden having conveyed said last named land to said plaintiff on the first day of November, 1909, by her deed of that date, duly executed and acknowledged by her, and delivered by her to plaintiff on that date; the said Annie E. Madden, who executed said deed for said land to plaintiff being the same Annie E. Madden who entered upon the said land described in paragraph one of these findings and inclosed said last named land, claiming to be the owner thereof, as aforesaid, in the spring of the year 1903, and who thereafter remained in possession of said land, claiming same as her own, up to the date of her said conveyance of said land last named to defendant as aforesaid."

Plaintiff had judgment that he was, at the commencement of the action, the owner of said land, to wit: the southeast quarter of section 1, township 42 north, range 12 east, Mount Diablo meridian, and that defendant has no right to or interest in the same and that he wrongfully entered upon said land and ejected plaintiff therefrom; that plaintiff recover possession and that a writ to that end issue for the purpose of placing plaintiff in possession. Defendant appeals from the judgment by the alternative method and claims, among

other contentions, that the evidence does not support the findings.

It is not necessary to notice plaintiff's title further than to say that it depends wholly on the title claimed to have been acquired by his grantor, Annie E. Madden, which is founded on adverse possession alone.

In 1892, defendant, with his family, occupied the land, on which he had proved up a homestead, and held the government patent. John Madden and Annie E. Madden, his wife, were his near neighbors living on adjoining land. Defendant was about to move away from the county. He was asked, when on the witness stand, what he did with this land when he left Modoc County and answered: "I left it in Mr. John Madden's care. Q. State the circumstances under which you did so. A. I delivered up the keys of the house to him; he was to have the use of the place while I was gone. I did not suppose it would be very long; he was to use it as his own, and I was to send money for taxes and he was to keep the place up and look after it until I got back. I also left an organ in the office for Mr. John Largent and he came and got it out of the office. Q. Out of whose office? A. Mr. John Madden's. Q. You delivered the keys to Mr. Madden? A. Yes, to Mr. Madden; he had full control of it." A receipt dated December 8, 1893, signed by John Madden, was introduced, showing that he had received $62.05 to pay taxes for 1892 and 1893 and the balance to be paid on note held by one Stewart.

Defendant's wife, Ada Hall, testified: "Q. You were with him (referring to her husband), were you, at the time you went away from Modoc County? A. Yes, sir. Q. Do you remember the occasion when you went away? A. Yes, sir. Q. Do you remember what was done with the keys to your place? A. Yes, sir. Q. What was done with them? A. He left them with Mr. John Madden. Q. You remember that, do you? A. Yes, sir." This testimony is not contradicted.

The court found that this land was then "unfenced, uninclosed and uncultivated wild land" and so remained until 1903.

The record discloses no evidence justifying this finding. Witness Campbell, who was Mrs. Madden's tenant of the land and who built the fences spoken of in the findings, went

there in 1897. He testified that when he first knew the land it was not inclosed except on the south and east sides, but he was not asked as to the character of the land, whether tillable or susceptible of producing crops. He testified that, in 1906, he planted potatoes at the southeast corner of the land. All that Mrs. Madden testified to on the subject was that "there was not any fencing done; we ran cattle out there; we had cattle at one time, and let them run out on that land. I think the buildings were used." She does not state in what year or years this was. There is no evidence that when defendant lived on the land, in 1892, and when he left the county the land was "uncultivated wild land" and the only evidence that it was "uninclosed and unfenced" related to no particular date earlier than 1897. We shall have occasion to refer to this evidence later along.

There is very little testimony showing what Madden did with the land after Hall left the county. Mrs. Madden testified that her first possession of the land was in 1903. She was asked if Mr. Madden had possession before that time. "A. I understood that Mr. Madden, or at least Mr. Madden said he held a mortgage on the place." (No mortgage to Madden was shown.) "Q. And he did exercise some rights of ownership over it, did he? A. Well, I could not swear to that; there was not any fencing done; we ran cattle out there; we had cattle at one time, and let them run on that land. Q. You used the buildings some, didn't you? A. Yes, I think the buildings were used." She testified, as she did in her own case, No. 1076, that she based her claim to the land in 1903, on the sale which is fully explained in that case, No. 1076. And the evidence is that the sale was set aside and the certificate canceled by order of court, on June 29, 1903, apparently on her own motion. Witness Campbell testified that he first knew the land in 1897 when he went to work for Mr. Madden; that the land at that time was not entirely fenced and Mr. Madden made some claim to the land but the witness did not know what it was. He testified: "I always knew he claimed it; I thought it belonged to him. I did not know but what it did." There is no evidence that Madden acquired any sort of hostile or other title or right. The beliefs or understandings of his neighbors that he owned the land are of no consequence based as they were on rumor. His use of

the land was entirely consistent with the trust reposed in him by Hall.

Mrs. Madden's testimony was that, in 1903, she leased the land to Campbell and he built the fence so as to inclose it. "Q. After he built the fence, for whom did he hold the land now in controversy? A. He held it for me. Q. Did he remain there in possession as your tenant until you sold the land to Mr. Mattes? A. He did." She testified that Campbell's possession was continuous, uninterrupted, peaceable, and quiet. Campbell testified that he had been in the exclusive possession of the land since 1903 under lease from Mrs. Madden until she sold it to plaintiff, in 1909. The evidence as to Mrs. Madden's claim under a sheriff's sale, the order of court setting the sale aside and canceling the certificate, in June, 1903, her appearance at that time as the wife of John Madden clothed with his power, of attorney to act for him, are substantially the same as in No. 1076.

We have, then, the case of a married woman, without color of title in her, acquiring title as her separate estate by adverse possession. In the case referred to we held that this could not be done and must, for the reasons therein fully set forth, so hold in this case.

In the present case the land is about three miles distant from the land in the other case. The same person, Mrs. Madden, is claiming adverse possession maintained by the same tenant, Campbell, for the same period of time. The law requires that the possession shall be open, notorious, exclusive, continuous, and uninterrupted. It is difficult to perceive how Mrs. Madden could have had this sort of possession at the same time of two tracts of land separated by three miles. The possession of the tenant may be said to have been her possession and as she had no other the question arises whether the tenant could by his possession meet the requirements of the law under the circumstances.

There can be no constructive possession without color of title (1 Cyc. 1123); and, under our statute, without color of title only such land as in actual possession can be thus acquired. (*Garrison* v. *Sampson*, 15 Cal. 93.) "Open, visible, and notorious possession is a necessary constituent of an adverse possession. The occupation or possession must be of such a nature that the owner may have knowledge or the

means of knowledge that there is a possession adverse to his title, under which it is intended to make title against him" (1 Am. & Eng. Ency. of Law, p. 832); and the possession must be continuous and uninterrupted.

Witness Campbell testified, in both cases, that during the five years of his tenancy and occupancy of the land involved in the two cases, he had open, notorious, continuous, and uninterrupted possession of each tract of land, although three miles apart. Mrs. Madden had no possession except such as she gained through her tenant. Campbell could not have been in actual, physical possession of both tracts at the same time and his testimony must be taken to mean that it was notorious that he fenced both tracts as Mrs. Madden's tenant; that his occupancy was uninterrupted by any other person and was unbroken in continuity, except as necessity required him to go from one tract to the other. It is very certain that nothing he did on one tract would count in the least in constituting adverse possession of the other. Where one undertakes to hold possession of noncontiguous and widely separated tracts of land, if adverse title can be thus acquired (a question we do not find it necessary to decide) his proofs of what he did should be even more explicit and convincing than where his acts relate to a single parcel. His possession of land in section 24 of a township would not tend to show possession of land in section 1 of another township. On the contrary, it would rather tend to show that he was in possession of only one parcel.

Campbell testified: That he had the Madden Ranch rented and Mrs. Madden employed him to fence the Hall land—160 acres. He built the fence on the west and north sides and connected the fence with fences already built by adjoining landowners on the east and south sides of the tract. The inclosure thus made, he testified, was "sufficient to turn stock." He testified that he had potatoes "in the southeast corner one year. Q. What year was that? A. I think it was in 1906. Q. That was the only cultivated crop you have raised on it? A. That was all, yes, sir. Q. What purpose did you use it for the other years? A. Pasturing stock. Q. State whether or not you used it for pasturing stock each year since you fenced it? A. Yes, sir." He testified that no one else had possession since he fenced the land; that his possession was

open, peaceable, continuous. There is no other evidence as to the use Campbell made of the land.

Section 324 of the Code of Civil Procedure provides as follows: "Where it appears that there has been an actual, continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment, or decree, the land so actually occupied, and no other, is deemed to have been held adversely." Section 325 of the same code provides that "For the purpose of constituting an adverse possesson by a person claming title" not so founded, "land is deemed to have been possessed and occupied in the following cases only: 1. Where it has been protected by a substantial inclosure. 2. Where it has been usually cultivated or improved," but "in no case shall adverse possession be considered established . . . unless it shall be shown that the land has been occupied and claimed for the period of five years continuously" and the claimant has paid all the taxes "levied and assessed upon such land." Section 321 of the same code declares that "the person establishing a legal title to the property is presumed to have been in possession thereof within the time required by law, and the occupation of the property by any other person is deemed to have been in subordination to the legal title, unless it appear that the property has been held and possessed adversely to such legal title, for five years before the commencement of the action." Section 324 requires "an actual, continued occupation of the land," and "the land so actually occupied, and no other, is deemed to have been held adversely." Section 325 defines what shall be deemed to constitute adverse possession under claim of title not written, and when "land is deemed to have been possessed and occupied," provided, however, under this and all other sections of the code, that "it shall be shown that the land has been occupied and claimed for the period of five years" and the taxes have been paid by the claimant.

Where one enters upon land under claim of title merely, as the court found was the fact in this case, and did not find that it was founded upon a written instrument, the fencing of the land without other evidence of ownership or claim would not of itself be sufficient, if, indeed, it would be sufficient in any case such as this. Where there is neither title

nor color of title there is no presumption of possession; it must be actual and the inclosing of the land by a fence would not necessarily imply possession or occupation, for the fence might remain as protection against stock for five years and the claimant make no visible or other use of the land. Clearly, this would not satisfy the statute.

The burden was on plaintiff to show that every element necessary to constitute adverse possession was made clear. (1 Cyc. 1143.) "The doctrine of adverse possession is to be construed strictly and such posesssion cannot be made out by inference, but only by clear and positive proof." (1 Am. & Eng. Ency. of Law, p. 887.)

As we have seen, there was no evidence of the character of the land nor that it was "usually cultivated"—that is, was put to such use as was customary in occupying and farming similar land in the vicinity; there was no evidence that Campbell pastured the land continuously during the grass season or for any definite length of time; one year, 1906, he planted potatoes on a portion of the land, which would indicate that some, we know not how much, was arable land such as in the neighborhood was cultivated to grain. His testimony that he used the land "for pasturing stock" and that he "used it for pasture each year since he fenced it," does not justify the inference that he thus used it continuously during the pasturing season. His statement would be true if he used the land but one day in each season. When, therefore, he testified that he had open, notorious, continued, and uninterrupted possession, the statement must be tested as to its true meaning by what he testified he actually did.

We have assumed that Mrs. Madden entered into possession without title or color of title and this because the court found that she entered under claim of title merely and because the certificate of sale, fully considered in No. 1076, the only title shown, was canceled early in 1903 and ceased to give even color of title, for it no longer had any existence. But if it can be held that she entered into possession of the tract here involved, in 1903, before this certificate of sale was canceled (and the evidence on that point is not clear) and that the case would then fall under the class mentioned in section 323 of the Code of Civil Procedure, that is, that her entry was under claim of title founded on a written instrument, our conclusion

would not be different. The law is very clearly set forth in *Webber* v. *Clarke,* 74 Cal. 11, [15 Pac. 431], from which we quote at some length. Plaintiff claimed under a school land patent and defendant under a sheriff's deed given under a judgment claimed to be based on a void tax. The court held it immaterial so long as on its face the deed was in due form and constituted, at least, color of title. The land was not inclosed or cultivated. The country around was open, uninclosed, uncultivated, and unimproved. The nearest "improvements" were half a mile distant and nearest sheep camp about a mile off. There was evidence that defendant and his grantors herded their sheep upon the land during the grazing season of each year—from February to July. During the rest of the year the land was "not pasturable for sheep" and during such time was entirely unoccupied.

"By actual possession," said Field, C. J., in a leading case, "is meant a subjection to the will and dominion of the claimant, and is usually evidenced by occupation, by a substantial inclosure, by cultivation, or by appropriate use, according to the particular locality and quality of the property." (Citing *Coryell* v. *Cain,* 16 Cal. 573; *Brumagin* v. *Bradshaw,* 39 Cal. 44.) Said the court, after quoting the foregoing definition: "Where, however, there is such subjection to the will and dominion of the claimant, manifested in some appropriate manner, residence upon property is not essential (citing cases) nor, in such case, is an inclosure necessary. (Citing cases.) In the case of grazing land, in a grazing country, herding sheep upon it would seem to be an 'appropriate use, according to the particular locality and quality of the property.' " Citing *Sheldon* v. *Mull,* 67 Cal. 300, [7 Pac. 710], where "it was held that pasturage without an inclosure was sufficient—the cattle being confined to the land herder," said the court: "There must, of course, be some definite boundaries to the possession. But it has been held in a long line of decisions that where a party enters under color of title, he has constructive possession of the whole tract described in the document." (Citing cases.) After further illustrating the principle on which the decision was based, the court said: "It is proper to add, to prevent misconception, that in what we have said we have reference solely to the case before the court, viz., a use of land by one entering under color of title. It might

be plausibly argued that where the use is by one claiming title 'not founded upon a written instrument, judgment or decree,' section 325 of the Code of Civil Procedure would operate to prevent mere pasturage from being a sufficient adverse possession. As to that we express no opinion." Whether the entry is with claim of title or not under a written instrument, or without color of title, the possession must be evidenced by means having reference "to the particular locality or quality of the property," must be "manifested in some appropriate manner." If the possession has been manifested exclusively by grazing stock on the land it should be made clearly to appear that such was the use to which it was adapted and customarily used and the use should be shown to have been continuous and uninterrupted, at least substantially, during the grazing season of each year. We do not think that the evidence in this case shows that all the elements indispensable to title by adverse possession have been established and nothing short of this would support the findings. (1 Cyc. 1143.)

The judgment is reversed.

Hart, J., and Burnett, J., concurred.