[Civ. No. 1327.   Third Appellate District.—September 14, 1915.]

## NORBET MATTES, Appellant, v. G. W. HALL, Respondent.

ADVERSE POSSESSION—BAR OF CLAIM OF HOLDER OF RECORD TITLE—NO-
TICE OF HOSTILE CLAIM.—In order to bar by adverse possession the
claims of one holding the record title to land, the owner must be
notified in some way, that the possession is hostile to his claim or
the statute does not operate on his right.

ID.—ENTRY UPON LAND BY PERMISSION OF OWNER—HOSTILE CLAIM—NO-
TICE.—Where a person enters into possession of real property by per-
mission of the owner without any tenancy whatever being created, ex-
cept at sufferance, possession being given merely as a matter of
favor, he can never acquire title by adverse possession, no matter
how long continued, against the true owner thereof, unless there
is a clear, positive, unequivocal disclaimer and disavowal of the
owner's title and the assertion by the occupant of a title in hostil-
ity thereto, notice thereof being brought home to the landowner.

ID.—ACTION FOR RECOVERY OF POSSESSION OF LAND—WANT OF NOTICE
OF HOSTILE HOLDING—FINDING JUSTIFIED BY EVIDENCE.—In this ac-
tion to recover the possession of land of which the defendant was
the holder of the record title, and to which the plaintiff claimed title
by adverse possession, it is held that the undisputed facts were
amply sufficient to justify a finding, either: 1. That the hostile
character of the holding of plaintiff's grantor was never in any
manner brought to the notice of the defendant; or 2. That the hold-
ing had its origin in the permission of the defendant and no clear,
distinct notice of a disclaimer of his title and a hostile holding was
ever given to him by plaintiff's grantor or by any one else.

ID.—NOTICE OF HOSTILE CLAIM—INCLOSURE AND CULTIVATION—EXCEP-
TIONS.—While ordinarily the inclosure, occupation, and cultivation
of land gives notice to the owner that the holding is hostile, there
are exceptions to the rule, as in the cases of tenants in common, or
agency-tenant, etc.

ID.—CASE AT BAR—EXCEPTION TO RULE.—It is held that this action is
also an exception to the general rule in that the completing of the
inclosure of the land under the circumstances was not sufficient to
impart to the owner notice of an adverse hostile holding and claim.

APPEAL from a judgment of the Superior Court of Modoc County and from an order denying a new trial. H. D. Burroughs, Judge presiding.

The facts are stated in the opinion of the court.

F. M. Jamison, for Appellant.

Joseph M. Cross, and Francis O. Hoover, for Respondent.

ELLISON, J. *pro tem.*—Action brought by plaintiff to recover possession of a quarter section of land. Trial by jury and verdict for the defendant, followed by a judgment in his favor. Appeal by plaintiff from the judgment and an order of the court denying his motion for a new trial.

The only point raised on this appeal is that the verdict of the jury is not supported by the evidence.

The case has been before this court before (21 Cal App. 552, [132 Pac. 295]) and for a full statement of the facts reference is made thereto. The defendant is the holder of the record title to the land, a patent therefor having been issued to him by the United States government on the nineteenth day of May, 1892. The plaintiff claims that he has acquired title to the land since the issuance of the patent by five years' continuous uninterrupted adverse possession on the part of his grantor. The verdict of the jury is an implied finding that plaintiff did not show title by adverse possession. Does the verdict of the jury find substantial support in the evidence? We think it does. For brevity we shall refer to the land involved in this action as the "Hall" land.

The elements necessary to constitute an adverse possession sufficient to bar the claims of one holding the record title are well stated in *Unger* v. *Mooney,* 63 Cal. 586, [49 Am. Rep. 100]: "The adverse character of the possession must in every case be manifested to the owner. The owner must be notified, in some way, that the possession is hostile to his claim or the statute does not operate on his right," and the law as to a claim of adverse holding by one who entered under permission of the owner is well stated in a note to *McCutchen* v. *McCutchen,* 12 L. R. A. (N. S.) 1140: "Where a person enters into possession of real property by permission of the owner without any tenancy whatever being created, except

at sufferance, possession being given merely as a matter of favor, he can never acquire title by adverse possession, no matter how long continued, against the true owner thereof, unless there is a clear, positive, unequivocal disclaimer and disavowal of the owner's title and the assertion by the occupant of a title in hostility thereto, notice thereof being brought home to the landowner.''

The undisputed facts in this case were amply sufficient to justify the jury in finding, either: 1. That the hostile character of the holding of plaintiff's grantor was never in any manner brought to the notice of the defendant; or 2. In finding that the holding had its origin in the permission of Hall and no clear, distinct notice of a disclaimer of his title and a hostile holding was ever given to him by plaintiff's grantor or by any one else.

The jury had before them evidence of the following facts: The plaintiff received in 1909, a deed to the Hall land from Annie Madden, who had been the wife of one John Madden. The defendant testified that soon after obtaining his patent to the land he left Modoc County and left the land in the care of John Madden under the following circumstances: ''We both lived there, I adjoining him and he with me, and we both fenced there, together, we fenced a quarter section. I did not want to leave the land vacant and I went to John Madden and told him—I left it with him on the ground he was my neighbor and I had to leave it with somebody. He was responsible and he was to have the key and keep the house locked up and look after it for the use of it. He was to have the use of the property until I returned.'' The defendant testified he did not intend to be gone very long, but, on account of ill health, he did not return to Modoc County until 1910. Soon after he left John Madden also left the county. Before going he executed to his wife, plaintiff's grantor, a general power of attorney to transact any and all business for him and manage his business affairs. He never returned. When he left he owned and lived upon real estate adjoining the Hall land. After he left and in 1898 Mrs. Madden leased all of the John Madden land and the Hall land to one James Campbell. He testified that he used the Hall land, after he rented it from Mrs. Madden, to run the stock he was using on it. He used it for grazing purposes. There was a house on the Hall land, but Campbell never lived in it or on the

land. Mrs. Madden never lived on the Hall land and was never in the house upon it. The place was partially fenced at the time, but not inclosed.

This was the situation in 1903. Mrs. Madden testified that she never claimed to own the land until 1903. In that year she set up a claim of ownership and again leased the land to Campbell. After the lease Campbell continued to use the place as before, pasturing stock upon it; in 1906 he planted a small piece to potatoes. The only change made in the physical condition of the property after 1903 was the building of one-half mile or mile of fence completely to inclose the place.

It appears that a judgment was obtained against John Madden and others and, upon execution issued, the Madden land and Hall land were sold in 1903. At that sale, on July 24, 1903, Mrs Madden bid in the Madden land and the Hall land and paid for it all six hundred dollars. On July 27, 1903, upon her motion, the court set aside the sale and ordered the six hundred dollars returned to her and it does not appear that anything further was ever done in the suit. In her affidavit to have the sale set aside she states she had a power of attorney from her husband, John Madden, and that at the sale, as his representative, she had given the sheriff directions to sell certain lands including the Hall lands, in one parcel.

Mrs. Madden paid all state and county taxes assessed against the Hall land from 1903 to date of deed. Defendant was never informed by any one that Mrs. Madden was claiming to own the land.

Upon these facts the jury was fully warranted in finding that the possession of plaintiff's grantor began in the permission of the owner. When she leased the Hall land to Campbell in 1898 she was acting for John Madden under the power of attorney. She leased to him the John Madden land and the Hall land. She did not claim to own her husband's lands she leased, nor the Hall lands. So the first lease to Campbell was under the power of attorney and not as owner and her possession of the land by tenant was under her husband who had the care and use of the property by permission of the defendant. This being so her possession could not ripen into a title until she brought home to the owner notice of "a clear, positive, unequivocal disclaimer and disavowal" of his title and the assertion of a positive holding by her,

Viewed in the light of all the facts in this case, the changes in the use, occupation, and condition of the land after 1903 from what it was before, imparted to defendant no notice of a hostile claim or holding on the part of Mrs. Madden. No one lived on the Hall place either before or after 1903. Campbell grazed a few head of stock on it before 1903 and also after that date. No one else used the land either before or after 1903. The only change in occupancy, use, or condition after Mrs. Madden claimed to own the land in 1903 from those existing before was that Campbell built some additional fence fully to inclose the land. This additional piece of fence was not of itself sufficient to give defendant notice that a holding thereon under permission had become hostile. The building of the additional fence was entirely consistent with the permission given John Madden to *use* the land and have what he could make from it.

Counsel for appellant states his position as follows: "Section 325 of the Code of Civil Procedure of this state sets forth what shall constitute adverse possession under a claim of title not written; and provides that land is deemed to be possessed and occupied for the purpose of constituting adverse possession as follows: 1. Where it been protected by a substantial inclosure. 2. Where it has been usually cultivated or improved. And it must have been occupied and claimed for the period of five years continuously and the taxes must have been paid by the claimant," and claims that the undisputed evidence shows that all these conditions were fulfilled by plaintiff's grantor.

The law is that the owner must have notice of the hostile claim. Ordinarily the inclosure and occupation and cultivation of land gives such notice to the owner. It is deemed to do so. But the other facts in the case may be such as to show that no inference of a hostile holding could be drawn from the fact of inclosure and cultivation. There are exceptions to the rule. Illustration may be found in the cases of tenants in common, or agency-tenant, etc., Inclosing and cultivating by persons standing in such relation would not necessarily impart notice to the owner of a hostile holding. And we think the case at bar is also an exception to the general rule announced in the statute in that the completing of the inclosure of the land under the circumstances of this case

was not sufficient to impart to the owner notice of an adverse hostile holding and claim.

The judgment and order are affirmed.

Chipman, P. J., and Hart, J., concurred.