[Civ. No. 12541.   First Dist., Div. One.   Feb. 14, 1944.]

DAVID A. WOOD et al., Appellants, v. JOSEPH DAVIDSON et al., Respondents.

F. Eldred Boland, J. W. Radil, Burton L. Walsh and Knight, Boland & Riordan for Appellants.

C. S. Baldwin for Respondents.

PETERS, P. J.—Plaintiffs brought this action to quiet their title to all of the waters of Robinson Spring, which is located upon the adjoining lands of defendants. Defendants denied the existence of title in plaintiffs, and, by cross-complaint, claimed title to the waters by adverse possession. By its judgment the trial court provided that defendants have gained a limited title to the waters by adverse possession, that is, that defendants own and have the first right to use all of the waters of the spring for irrigation, stock and domestic purposes from April 1st to September 10th of each year, and that for the balance of the year defendants have the right to use one and one-half miner's inches of the flow of the spring measured under four-inch pressure, and that plaintiffs have the right to all over that quantity. From this judgment the plaintiffs appeal.

The parties claim title to their respective lands through a common grantor by mesne conveyances. Plaintiffs own 880 acres, defendants the 480 acres adjoining. When the common grantor, Kirkpatrick, conveyed the land upon which the spring is located to defendants' predecessor in 1905 the deed contained the following provision: "Together with all the right, title and interest of the party of the first part, by use or otherwise, to all the waters flowing on said tract, and especially from Pleasants Canyon which puts onto said

tract from the east. Also one-fourth ($\frac{1}{4}$) of the waters of a spring known as 'The Robinson Spring' situated near the center of the southwest quarter of section twenty-four (24), Township Forty-seven (47) North, Range Fourteen (14) East M. D. M.'' It is plaintiffs' theory that thereby Kirkpatrick reserved three-fourths of the waters of the spring as an appurtenance to the land which he retained and which plaintiffs now own, and that such water right is appurtenant to their ownership. Although, in their complaint, they claimed the right to the flow of all the waters of the spring over and across their property, they now concede that since their right depends on this instrument it cannot extend to more than three-fourths of the waters of the spring.

Plaintiffs' claim is entirely predicated upon record title to three-fourths of the waters of the spring—that is, plaintiffs claim as record title owners of the land to which they claim the three-fourths water right is appurtenant. The various deeds in plaintiffs' chain of title leading back to Kirkpatrick's deed did not refer expressly to a right in the flow of Robinson Spring, but did purport to convey ''appurtenant'' water rights, without expressly describing them. For the purposes of this opinion, inasmuch as defendants have not appealed, it may be assumed that the deeds introduced by plaintiffs show record title in plaintiffs to the full interest in the lands to which they claim three-fourths of the waters of the spring are appurtenant, although an examination of those deeds tends to indicate that plaintiffs have record title only to an undivided one-half interest in such lands.

The defendants became the owners of the land upon which the spring is located by deed dated April 23, 1931. The one-fourth provision relating to the waters of Robinson Spring above quoted from the 1905 deed, was not included in any of the numerous subsequent deeds to defendants' predecessors in interest. The deed to defendants purported to convey all water and water rights appurtenant to the land. The various instruments in the chain of title were recorded, but defendants had no actual knowledge of the one-fourth provision in the 1905 deed. Defendants testified that they believed in good faith that ownership of the lands carried with it ownership of all of the waters of the spring, and that they purchased the property with that thought in mind. The only other water on defendants' property was such as flowed across

the road from the Pleasant's ranch on the east—apparently, an insignificant quantity. As already pointed out, the trial court found that defendants, during the irrigation season, had gained the right to the entire flow of the spring by adverse possession. █ The adverse claim was one asserted in the good faith belief that the water belonged to defendants. Such a claim may ripen into title. A claim of right does not cease to be adverse because asserted under mistake. (*Park* v. *Powers,* 2 Cal.2d 590 [42 P.2d 75].)

█ The lands of defendants are, for the most part, semi-arid grazing lands. The defendants acquired title to their land in 1931, as above noted, and have resided continuously on the land since 1932. Their son has lived on the property in a separate house close to the spring since 1931. The evidence shows that since 1932 or 1933 the defendants, in the summer months, have used practically the entire flow of the spring for domestic purposes, for the watering of their stock, and for irrigation. Both the defendants and their son have good-sized garden plots which have been irrigated by the spring, and a few acres of alfalfa are likewise so irrigated. The flow of the spring is quite small, averaging but two miner's inches in the summer months, and averaging about six miner's inches in the winter time.

The trial court found, and the finding is amply supported by the evidence, that when defendants went to live upon the property the land near the spring was so trampled by live stock as to form a considerable bog or mudhole in which the waters of the spring became diffused, and that, even at that time, no appreciable portion flowed beyond the lands of defendants onto plaintiffs' land. Defendants cleaned out the spring, the court found, and dug a ditch extending westerly and northwesterly across their lands, through which they diverted all waters of the spring during the entire irrigation season of each year commencing with 1933 and continuing to the commencement of this action on July 19, 1939. By means of this ditch they conveyed all waters of the spring not required for their stock or for their domestic use to their lands lying westerly and northwesterly of the spring "for the irrigation of said lands, and for the growing and maturing of gardens and other crops thereon. . . ."

The court made general findings as to defendants' use being open, notorious, continuous, uninterrupted and adverse.

The court viewed the property. In a state of nature, the court found, the waters of the spring would flow southwesterly onto plaintiffs' lands, rather than in the northwesterly direction they were carried by defendants' ditch. In an opinion filed by the judge he referred to the fact that a public highway adjoined the defendants' property on the east, about one hundred feet from the spring, and stated that during the irrigation season the waters of the spring could be easily seen flowing in defendants' ditch or ditches onto their gardens and crops.

There was little showing as to the use of either plaintiffs' or defendants' lands prior to defendants' entry, except for the testimony of defendant Davidson that Farleigh, defendants' immediate grantor, had been in possession of both plaintiffs' and defendants' lands immediately prior to the 1931 conveyance to defendants. In 1934 plaintiffs leased their lands to one Miller who has resided on those lands continuously from 1935. Miller was the only witness to testify for plaintiffs. Apparently some water ran down from defendants' upper lands during his occupancy which he used for irrigation. Whether this water was Robinson Spring water, or was water that came across the road from the Pleasant's ranch does not appear. The evidence supports the findings that for more than five years defendants used practically the entire flow of the spring for beneficial purposes, and that such use was open, notorious, continuous, uninterrupted and adverse, and that defendants paid all taxes levied against their property, the water right not being separately assessed. Plaintiffs do not seriously challenge the sufficiency of the evidence on these issues, but they urge that it was indispensable for defendants to show that plaintiffs had knowledge or notice of defendants' adverse use, and contend that there is no evidence to show that plaintiffs ever knew that defendants' use was adverse. It is true that there is no evidence that plaintiffs had actual notice that defendants were using the water. The facts show that defendants simply used all of the water from the spring in the summer months in the honest belief that the water was theirs, and that at no time did they discuss the problem with plaintiffs or with plaintiffs' tenant.

There is no requirement in the law that the record owner must have actual knowledge of the claims of the ad-

verse claimant. The rule approved by all of the authorities is that either the record owner must have actual knowledge or the possession must be so open, visible and notorious that it will raise a presumption of notice to him of the adverse claim. Thus in *Pabst* v. *Finmand,* 190 Cal. 124, 130 [211 P. 11], the rule is stated as follows: "We do not mean to hold that a right may not be gained by an upper riparian proprietor by prescription, but to do so it must be clearly shown either that actual notice of the adverse claim of such owner has been brought home to the other party, or that the circumstances are such, as for instance the use of all of the water of the creek, that such party must be presumed to have known of the adverse claim." Open, notorious and visible possession is the equivalent of actual knowledge. If the adverse claimant is in open, notorious and visible possession of the property involved, and the true owner fails to look after his interests and remains in ignorance of the claim, it is his own fault. (See many cases collected 2 C.J.S. p. 554, sec. 41, et seq.) In *Myran* v. *Smith,* 117 Cal.App. 355, 362 [4 P.2d 219], the rule is stated as follows: "As has been said in some of the earlier cases, among which may be cited *Curtis* v. *Le Grande Water Co.,* 20 Ore. 34 [10 L.R.A. 484, 23 P. 808, 810, 25 P. 378], to acquire the right by prescription in the lands of another, the possession must be adverse, continuous, uninterrupted, and by the acquiescence of the owner. To effect that result the possession taken must be open, hostile and continuous—'he must unfurl his flag on the land, and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest.' " (See, also, *Scott* v. *Warden,* 111 Cal.App. 587 [296 P. 95]; *Sheehan* v. *All Persons,* 80 Cal.App. 393 [252 P. 337]; *Huling* v. *Seccombe,* 88 Cal.App. 238 [263 P. 362]; *Goodrich* v. *Mortimer,* 44 Cal.App. 576 [186 P. 844]; *Hibberd* v. *McCosker,* 55 Cal.App. 568 [203 P. 810]; *Mattes* v. *Hall,* 28 Cal.App. 361 [152 P. 436]; *Pacific Gas & E. Co.* v. *Crockett L. & C. Co.,* 70 Cal.App. 283 [233 P. 370].) There is nothing in *Clarke* v. *Clarke,* 133 Cal. 667 [66 P. 10], or *Lyons* v. *Schwartz,* 40 Cal.App.2d 60 [104 P.2d 383], relied upon by plaintiffs, contrary to the views expressed herein. Both cases involved claimed rights of way over the lands of another. In both cases the nature of the use was held not to have been so open, visible and notorious as to give constructive notice to the owner. The use in those cases was in

no way similar to the exclusive use shown by the evidence in the instant case.

The evidence in the present case meets the requirements of the cases referred to above. The defendants, in the summer months, used the entire flow of the spring for beneficial purposes. The natural slope of the defendants' lands from the spring was toward plaintiffs' lands. Defendants, by means of ditches, artificially conveyed the water to their various irrigation projects away from the course it would have taken in a state of nature. While it is true that there is evidence that the spring was not visible from the public road bordering the property, there was also evidence that the ditches leading from the spring were visible from the road. The trial judge, by stipulation, visited the premises. What he saw is, of course, evidence. Under such circumstances, the trial court was certainly justified in finding that the possession of defendants was obviously open, notorious and visible, and that, under such circumstances, plaintiffs had constructive knowledge of the adverse use.

The judgment appealed from is affirmed.

Ward, J., and Dooling, J. pro tem., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 13, 1944.