Filed 12/23/25  Aguero v. Wineke CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| MARIA AGUERO,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>JANICE WINEKE, as<br>Administrator, etc., et. al.<br>        Defendants and Respondents. | B339604<br><br>(Los Angeles County<br>Super. Ct. No. 20CMCV00086) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jonathan Rosenbloom, Judge.  Affirmed.

Michael A. Younge for Plaintiff and Appellant.

Law Offices of Robert S. Altagen, Robert S. Altagen for Defendant and Respondent Janice Wineke.

No appearance for Defendant and Respondent Sara Rashad.

————————————

Maria Aguero appeals from the trial court judgment rejecting her quiet title claim. Aguero claimed ownership of a condominium by adverse possession against the defendants, Janice Wineke, administrator of the Estate of Mohammed Nabil Rashad (the Estate), and Rashad's adult daughter, Sara Rashad.[1] Prior to his death, Rashad and Aguero lived in the condominium together. Aguero continued living there after Rashad died. On one occasion, Aguero was rude to Sara and withheld Sara's mail. Aguero also changed the condominium's locks. Following a bench trial, the trial court determined this evidence did not prove Aguero's permissive use of the property had become adverse and hostile. On appeal, Aguero contends that this evidence, together with her payment of the property's mortgage, establishes that her possession was adverse and hostile as a matter of law. We disagree and affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In 2002, Rashad purchased a condominium in Carson. Aguero and Rashad, who were in a "dating relationship," lived together in the condominium. The property's title is solely in Rashad's name, and he purchased it with a loan in his name and against his credit.

Rashad died intestate in March 2010. Rashad has three surviving adult children: Sara, Mona Rashad, and Omar Rashad. After Rashad's death, Aguero continued living in the condominium. She also paid the mortgage, insurance, HOA fees, and property taxes. No one informed the mortgage holder that

---

[1] Wineke, administrator of the Estate of Mohammed Nabil Rashad, is the only defendant who has appeared on appeal. We refer to Sara Rashad as Sara for clarity and intend no disrespect.

Rashad had passed away. Aguero did not pay off the mortgage or acquire title to the property in her name.

In March 2020, Aguero filed a verified complaint to quiet title to the condominium by adverse possession.[2] Aguero alleged her possession of the property had been actual, open, hostile, continuous, and exclusive since March 2010, in excess of the five-year statutory period for adverse possession as required by Code of Civil Procedure "sections 315 [to] 330." She further asserted she had paid all taxes and assessments on the property for the previous five years.

In Sara's answer, she asserted that Rashad's legal heirs had granted Aguero permission to remain on the property after Rashad's death on the condition that she pay the mortgage, "any association fees," and taxes, and that she undertake responsibility for maintenance. Sara stated these conditions were in lieu of rent.

In January 2021, the court appointed Wineke administrator of the Estate. Wineke subsequently filed a separate answer to Aguero's complaint on behalf of the Estate.

In October 2023, the court conducted a bench trial. The parties filed a stipulation stating, among other things, that the mortgage was in Rashad's name; since January 1, 2015, Aguero had paid the mortgage; and, since February 1, 2015, Aguero had paid the property taxes. The parties also stipulated that Aguero had moved in with Rashad when he purchased the property, and

---

[2] In November 2020, the trial court ordered this proceeding related to a probate case, *In re: Estate of Mohammed Nabil Rashad*, case No. 20STPB08741, and this case was transferred to the probate department of the superior court.

3

that after he died, Aguero continued to pay the mortgage but did not inform the mortgage holder that Rashad had died.

The Estate contended Aguero could not establish the elements of adverse possession because, in relevant part, Aguero had permission to reside on the property, thus her possession was not hostile or adverse. Aguero countered that her permission to reside on the property terminated on Rashad's passing. She denied that there was any agreement for her to reside on the property as long as she made certain payments in lieu of rent.

At the close of Aguero's evidence, defendants moved for judgment pursuant to Code of Civil Procedure section 631.8. The court granted the motion and ordered the parties to prepare a statement of decision. In May 2024, the court filed a statement of decision which the parties stipulated would be used as the agreed statement for purposes of this appeal. The proceedings were not transcribed.

The statement of decision indicated that Sara and Mona Rashad testified that Rashad's children (the heirs) had an agreement with Aguero allowing her to remain on the property on the condition she pay all expenses, including the mortgage and property taxes, in lieu of rent. In her testimony, Aguero denied ever making this agreement.

The trial court determined Aguero established all of the elements of her adverse possession claim except that her possession was adverse and hostile. The court recounted Sara's trial testimony admitting that "on one instance after the last time Sara Rashad entered into the subject residence, when Sara Rashad went to the property to fetch [her] mail, that plaintiff was rude to her and refused to relinquish the mail, and further that plaintiff had changed the locks." The court found "insufficient

4

evidence to determine whether plaintiff's possession was by consent or not, but that otherwise the only evidence i[n] support of the adverse and hostile element—being rudeness on one occasion, withholding Sara Rashad's mail, and changing the locks—is insufficient to adverse [*sic*] and hostile conduct on plaintiff's part.  Possession that commences with the owner's permission does not become hostile or adverse until the possessor has disclaimed the interests of the owner and has given the owner distinct notice of the hostile character of the possession."

The court entered judgment in June 2024.  Aguero timely appealed.

## DISCUSSION

Aguero contends the trial court erred in concluding she did not establish that her possession of the property was adverse and hostile.  We find no error and affirm.

## I.    Standard of Review

In reviewing a judgment based on a statement of decision, "[w]here the facts are undisputed, the effect or legal significance of those facts is a question of law.  [Citation.]  We review any questions of law de novo." (*Gomez v. Smith* (2020) 54 Cal.App.5th 1016, 1026.)  However, " ' " [w]here [a] statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.' " ' [Citation.]" (*Id*. at p. 1027.)  Further, "when an appellant challenges a trial court's conclusion that the appellant failed to carry its burden of proof at trial, 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.' " (*Vieira Enterprises, Inc. v. McCoy* (2017) 8 Cal.App.5th 1057, 1074

5

(*Vieira*).) Our review after a bench trial is not limited to the evidence cited in a trial court's statement of decision and "extends to the entire record." (*Marriage of Schmir* (2005) 134 Cal.App.4th 43, 50.)

## II. Aguero Did Not Establish that Her Permissive Possession Became Adverse and Hostile

"The elements of an adverse possession claim consist of the following: (1) actual possession by the plaintiff of the property under claim of right or color of title; (2) the possession consists of open and notorious occupation of the property in such a manner as to constitute reasonable notice to the true owner; (3) the possession is adverse and hostile to the true owner; (4) the possession is uninterrupted and continuous for at least five years; and (5) the plaintiff has paid all taxes assessed against the property during the five-year period." (*Bailey v. Citibank, N.A.* (2021) 66 Cal.App.5th 335, 351 (*Bailey*).)[3] Only the third element is at issue here.

---

[3] Adverse possession under a claim of right, as Aguero claims here, is governed by Code of Civil Procedure sections 324 and 325. Section 324 states: "Where it appears that there has been an actual continued occupation of land, under a claim of title, exclusive of any other right, but not founded upon a written instrument, judgment, or decree, the land so actually occupied, and no other, is deemed to have been held adversely." Section 325, subdivision (a), provides: "For the purpose of constituting an adverse possession by a person claiming title, not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only: [¶] (1) Where it has been protected by a substantial enclosure. [¶] (2) Where it has been usually cultivated or improved." Aguero does not explicitly rely on these provisions.

6

"At its most basic level, the doctrine of adverse possession relates to *possessory* estates, i.e., it involves possession of property hostile to the corresponding rights of the true owner." (*Bailey*, *supra*, 66 Cal.App.5th at p. 352.) "The possession must be actual, open and notorious, and exclusive. The use must be adverse. Thus, where the owner permits usage of the property, that use is not adverse." (*Machado v. Southern Pacific Transportation Co.* (1991) 233 Cal.App.3d 347, 362.)

"What kinds of use are recognized to be adverse and hostile naturally depend on the circumstances of the case, including the nature of the property interest that has been arguably extinguished." (*Vieira*, *supra*, 8 Cal.App.5th at p. 1078.) As one treatise explains: "Possession with permission and consent of the owner is neither hostile nor adverse. Possession that commences with the owner's permission does not become hostile or adverse until the possessor has disclaimed the interests of the owner and has given the owner *distinct notice* of the hostile character of the possession." (6 Miller & Starr, Cal. Real Estate (4th ed. 2025) § 18:13, fn. omitted, italics added; *Madden v. Alpha Hardware & Supply Co.* (1954) 128 Cal.App.2d 72, 75.)

Therefore, a party "who uses land with the consent of the owner may effect an ouster for purposes of adverse possession by unqualified and definite renunciation of subordination to the owner . . . . However, such renunciation must be of *sufficient clarity* to put the owner on notice that subsequent possession is adverse to his title, for the very essence of the requirement of ouster is *notice*." (*Southern Pac. Co. v. City & County of San Francisco* (1964) 62 Cal.2d 50, 56, italics added; see *Pacific Gas & E. Co. v. Crockett L. & C. Co.* (1924) 70 Cal.App. 283, 289 [purpose of adverse possession statutory requirements is that

7

"owner may by unequivocal acts" have notice]; *Madden v. Hall* (1913) 21 Cal.App. 541, 547 [permissive possession continues until hostile acts showing "assumption of right in himself hostile to his principal"].)

The issue before us is whether Aguero's conduct was sufficiently clear and unequivocal to communicate her renunciation of the Estate's interest in the property. Aguero contends that the undisputed evidence that she was "rude," withheld Sara's mail on one occasion, changed the locks, and paid the mortgage without informing the mortgage holder of Rashad's death, established adverse and hostile possession as a matter of law. We disagree.

Our review is necessarily limited by the sparse record before us, which offers the undisputed facts with little context. Standing alone, being rude and withholding mail on one occasion would not provide notice that Aguero's permissive use had become adverse and hostile. Aguero's attitude towards Sara during that interaction may have been due to myriad factors, and these acts did not communicate that Aguero was asserting a claim to the title of the condominium adverse to the heirs. We note that Aguero cites no legal authority to support the claim that a possessor's rudeness to the owner, or a single refusal to turn over the owner's mail, provides notice of a permissive possessor's hostile and adverse possession.

As to Aguero's act of changing the locks, there is no evidence that any of the heirs had keys or an expectation of entry to the property previously, that any of the heirs requested a key and Aguero denied the request, or that Aguero's act of changing the locks otherwise provided clear notice that she was claiming title to their father's property. (See *Spiller v. Mackereth* (Ala.

1976) 334 So.2d 859, 862 [insufficient evidence of ouster where no evidence cotenants requested keys or were prevented from entry due to changed locks or that purpose of changing locks was to exclude cotenants rather than protect merchandise inside].) Again, Aguero does not cite any authority in which changing locks—*without any other acts that might provide notice*—was sufficient to demonstrate that a permissive use had become hostile and adverse.  (Cf. *California Maryland Funding, Inc. v. Lowe* (1995) 37 Cal.App.4th 1798, 1806–1807 [adverse and hostile element proven by possessor's "refusal to surrender the property, tossing away for-sale signs, maintaining and improving the property, her 1981 lawsuit to set aside a gift of community property [citation], and her insistence on contesting the many unlawful detainer actions"].)

Aguero's possession commenced with the owner's permission, and there was no evidence that she and Rashad were cotenants.  There is also no evidence the heirs ever lived at the property.[4]  That Aguero changed the locks did not provide clear notice that her use of the property was different in nature from her use while Rashad was alive.  (See *Mattes v. Hall* (1915) 28 Cal.App. 361, 365 [insufficient notice that previously permissive use became hostile where only change was fencing land because fence was consistent with the permissive use]; *Bass v. Rounds* (Mo.Ct.App. 1991) 811 S.W.2d 775, 779 [changing locks failed to show possession was hostile and contrary to permissive use where possessor subsequently made statements appearing to recognize cotenant's ownership interest].)

---

[4]     The condominium is in Carson, California, and the record shows addresses for the three heirs in Los Angeles, Texas, and Massachusetts.

9

Aguero's act of paying the mortgage on the property without informing the mortgage holder of Rashad's death also failed to demonstrate adverse and hostile use.[5]  There was no evidence that Aguero attempted to assume the mortgage and her payments alone did not suggest a transfer of property rights. Indeed, under the circumstances of this case, Aguero's act of making mortgage payments was consistent with her ongoing permissive use.  Further, Aguero's argument rests specifically on her concealment of Rashad's death from the *mortgage holder*, which does not establish notice to the Estate or the heirs that her possession had become hostile.

Aguero relies on *Estate of Hughes* (1992) 5 Cal.App.4th 1607 (*Hughes*), and *Zaslow v. Kroenert* (1946) 29 Cal.2d 541 (*Zaslow*), to support her arguments.  Neither case calls for a different result here.  As an initial matter, both cases concern ouster by a cotenant (*Hughes*, at p. 1612, citing *Zaslow*, at p. 548), which is governed by a separate statutory scheme and is distinct from the doctrine of adverse possession.  (*Hughes*, at pp. 1615, 1616, citing Civ. Code, § 843.)[6]  Aguero does not argue she was a cotenant with the Estate entitled to possession.

---

[5]    The trial court did not rely on this fact in its statement of decision, so it is not part of the agreed statement; however, the parties stipulated to this fact before trial.

[6]    Civil Code section 843, subdivision (a), provides: "If real property is owned concurrently by two or more persons, a tenant out of possession may establish an ouster from possession by a tenant in possession in the manner provided in this section." While "[t]his section supplements and does not limit any other means by which an ouster may be established," it provides that a "tenant out of possession may serve on a tenant in possession a

10

Further, while the elements of cotenant ouster may provide an analogy to adverse possession, *Zaslow* and *Hughes* are distinguishable. In both cases, there was clear notice that the cotenant's possession had become hostile and adverse to the other cotenant. In *Hughes*, which concerned a husband whose deceased wife had owned the property at issue, the court observed that "at common law ouster was established by a cotenant's unambiguous conduct manifesting an intent to exclude another cotenant from gaining or sharing possession of jointly owned property. Here George manifested a similar intent by categorically alleging in his petitions [relating to community property and probate] that he was the sole owner of the property [as the surviving spouse] and that Kathryn's two children had no interest in the property. On this basis we conclude the petitions were the functional equivalent of changing locks or posting 'no trespassing' signs telling a cotenant out of possession that he or she may not enter the premises. It is one thing for the cotenant in possession to remain silent, but quite another for the cotenant to seek legal redress claiming entitlement to all the property to the exclusion of other claimants." (*Hughes*, *supra*, 5 Cal.App.4th at pp. 1614–1615.) Thus, by filing petitions upon his wife's death asserting full ownership of the property, the husband provided clear and unambiguous notice to the wife's children that he was claiming the property solely for himself.

In *Zaslow*, ouster of a tenant in common was established through the other tenant's acts of changing the locks on the doors, but also other conduct, including posting signs stating "no trespassing" on the property and denying the other tenant entry.

---

written demand for concurrent possession of the property." (*Id.*, subds. (a) & (b).)

11

(*Zaslow*, *supra*, 29 Cal.2d at p. 548.)  In *Zaslow*, the cotenant in possession and her agent had also broken into the premises and "converted [the] plaintiff's personal property to their own use . . . ."  (*Id.* at p. 546.)  Together, this was an unmistakable indication of a cotenant ouster.

Aguero offered no evidence of similar conduct here.  The four acts Aguero has identified did not demonstrate as a matter of law that she had unequivocally indicated that she was claiming the property as her own, adverse to the Estate's title.  The evidence did not compel a finding that her permissive use became adverse and hostile.

**DISPOSITION**

The judgment is affirmed.  Defendant Janice Wineke, administrator of the Estate of Mohammed Nabil Rashad, is to recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.

13