[Civ. No. 20301.   First Dist., Div. Three.   Nov. 19, 1962.]

EDITH M. SAXON et al., Plaintiffs and Respondents, v. ALTHEA L. DuBOIS, Defendant and Appellant.

Leo M. Cook for Defendant and Appellant.

Timothy W. O'Brien for Plaintiffs and Respondents.

DEVINE, J.—A spring and a rivulet which are on lands of appellant, Althea DuBois, are the subjects of this litigation. Respondents, the plaintiffs, are Lawrence Daut and his daughters, Mrs. Saxon, Mrs. Saunders and Mrs. Schorlig, who are the owners of property adjoining that of defendant-appellant. Mr. Daut is the operator of the property and the party plaintiff who has taken the lead in the litigation. He was the original owner of the land now owned by Mrs. DuBois, this land then being the southerly part of his holdings. He conveyed this southerly part to Edward C. Teague in 1932, Teague conveyed it to Crvarich in 1943, and Crvarich to Evkovich in 1943. Mrs. DuBois bought this southerly portion of the property originally owned by Daut at a probate sale, from the administrator of Luis Evkovich, deceased. The administrator's deed is dated December 26, 1947, but the transaction was not closed through a title company until February 24, 1948, when a title policy was issued and the deed was recorded. The title policy issued to Mrs. DuBois noted as an exception a "Right of Way granted by Edward C. Teague, an unmarried man, to Lawrence Daut by deed dated August 26th, 1933, recorded September 15th, 1933, in Liber 83 of Official Records, page 372, Mendocino County Records." Mrs. DuBois did not investigate the meaning of this reservation until 1950, and when she did examine the Teague-Daut deed in the recorder's office in 1950, she read the deed with its misdescription, referred to below.

In 1932, Daut conveyed the northerly portion (as well as the southerly, which, as stated above, became Mrs. DuBois' property) of his property to Teague, and in 1933, Teague reconveyed the northerly portion to Daut who, with his daughters, all plaintiffs, have owned it ever since. Teague also conveyed water rights, the deed reading: ''Together with the right to a ditch and to laying pipes therein from the aforesaid granted premises to that certain spring located in a canyon in the northwest quarter of the southwest quarter of said Section 20, and the right to take the water of said spring through said ditch and pipe onto the premises hereby granted; and also the right to go upon the lands of said party of the first part, in a prudent and careful manner, to construct and repair said pipe in said ditch when necessary, and to do in the same manner such other things as necessarily appertain to the occupancy of said rights and privileges; it being the intention of said party of the first part to convey to said party of the second part all the right which he has to said spring and to the water supplying the same, and to the pipe line now in use upon said premises.'' The deed contained a misdescription because, as the evidence shows and the court found, the spring is located in a canyon in the northwest quarter of the *southeast* quarter, not of the southwest quarter.

The water system set up by Daut in 1928 on the property then owned by him, and now owned by DuBois, has remained substantially the same ever since. It consists of a pipe, the diameter of which varies from 2 inches to 1 inch, running 369 feet into the property now owned by DuBois, from the Daut lands, a catch basin into the rivulet at the far end, and a storage reservoir on the Daut land at the other end. The pipe runs on the surface of the ground except at a few places where it is slightly suspended in air as it crosses ditches and depressed areas.

The catch basin takes the water from the rivulet during the dry months (there is an abundance of water running down the range in winter and spring), and the pipe carries it across a fence to plaintiffs' land, where it is used for irrigation, and this has been so since 1928. The rivulet is fed chiefly from a spring in the northwest quarter of the southeast quarter of section 20, the one referred to in the erroneous description in the deed, although it derives some of its water from other springs. The catch basin in the rivulet is about 1,100 feet below the spring; the water tumbles freely down the mountainside a few hundred feet before it is channeled into the rivulet.

Althea DuBois did not inspect the lands carefully before the purchase, but she did discover the Daut pipe on her land soon after she had bought the land, in 1948. Mrs. DuBois did nothing to disturb the Daut arrangement until 1959, when she built a dam at the spring and diverted all of the water away from the rivulet and from the Daut water system, and she uses it for irrigation on her land. Defendant's husband, acting as her agent, shortly before he and his wife constructed their dam, told Daut that he knew Daut's rights and that he was not going to "bother with your pipe full of water."

There is a spring in the northwest quarter of the southwest quarter of section 20 (this is the quarter referred to in the deed), the waters from which are carried by pipe to a tank for DuBois household use. This spring is nowhere near the canyon in which the Daut pipes are laid, and is not on the land of any of the parties to the case.

The judge, with the consent of the parties, inspected the properties.

Plaintiffs' complaint seeks to reform the Teague-Daut deed, to quiet title, and to obtain declaratory judgment. Defendant cross-complained, seeking to quiet title to the spring. The court reformed the deed, quieted title to plaintiffs to the entire flow of the spring, found that the water flow in the canyon is the flow from the spring from May 15 to December 1 of each year and awarded this flow to plaintiffs, and declared that plaintiffs have the right to construct, maintain and repair diversion works necessary to enjoyment of the spring and canyon waters. The court found that there are surplus waters in the canyon between December 1 and May 15 of each year, and allowed defendant to divert waters in that period, to the extent of her existing diversion works.

Defendant appeals, contending: (1) that defendant was a bona fide purchaser, and reformation of a deed that was made between prior parties could not be made to affect her estate, and that even if reformation is allowable, proper construction would limit the grant to the portion of the water flow which reached the distal end of the pipe; (2) that the decision violates the rule that prescription does not go upstream; and (3) that even if reformation is decreed and prescription is declared to exist, Daut would not be entitled to the entire flow of the spring, but only to a riparian interest based upon beneficial use.

The question of reformation of the deed between prior parties, Teague and Daut, affecting defendant's interest, is

to be answered by considering whether defendant had notice to remove her from the protection of Civil Code section 3399. This section provides for reformation because of mutual mistake of the parties to an instrument, but only "so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value." The protected third persons referred to in section 3399 are not those who purchase with notice, actual or constructive, of the rights of other persons whose interests have been described defectively in written instruments. (*Sieger* v. *Standard Oil Co.*, 155 Cal. App.2d 649, 656 [318 P.2d 479].)

We find that there is substantial evidence to support the finding of notice. Although the evidence is uncontradicted that Mrs. DuBois did not see the Daut water system until about a month after she had purchased the property, she also testified that she did not make a thorough examination before the purchase, because she could not get time off from her employment. She did discover the pipe by walking along the fence line of her property in March 1948. The trial judge went on the property and could determine how open and visible the Daut water system was. What he saw is evidence in the case. (*Wood* v. *Davidson*, 62 Cal.App.2d 885, 891 [145 P.2d 659].) Defendant has made much of certain testimony of Daut to the effect that the pipe was not visible because it was covered with foliage, but this related to visibility from a certain road. Notice is a question of fact. (*Lindsay* v. *King*, 138 Cal.App.2d 333, 343 [292 P.2d 23].)

Whether defendant knew of the possession by Daut of the pipe and catch basin is immaterial. It was her duty to know before making the purchase, else the purchaser could purposely avoid any inquiry on the subject and thereby defeat the rule of notice by possession. (*Follette* v. *Pacific Light & Power Corp.*, 189 Cal. 193, 213 [208 P. 295, 23 A.L.R. 965]; *Scheerer* v. *Cuddy*, 85 Cal. 270, 273 [24 P. 713]; *Wineberg* v. *Moore*, 194 F.Supp. 12, 16, 17; *Beverly Hills Nat. Bank* v. *Seres*, 76 Cal.App.2d 255, 263 [172 P.2d 894].) Had Mrs. DuBois made the examination which led to the discovery before the purchase, she would have had several avenues of information open to her. The pipe plainly led to Daut's land, and, of course, reasonable diligence would have prompted an inquiry addressed to Daut. A further means of inquiry would be to read carefully Exception No. 2 on the title policy which described Daut's right of way (Mrs. DuBois testified she did not "check" this until 1950), and inquiry of the title com-

pany officers or of Daut would have brought about inspection of the Teague-Daut deed itself. It would have taken but little reflection for her to conclude that the right of way and the right to take water had to do with the pipe running from Daut's land onto her own. ▉▉ The use of a plainly visible easement across the land of a prospective purchaser is sufficient to put him on such inquiry as would lead to actual knowledge of the rights of those apparently exercising the easement. (*Scott* v. *Henry,* 196 Cal. 666, 671 [239 P. 314].)

Appellant argues that even if finding of such notice can be sustained, the notice would go only as far as the pipe and the catch basin, and would not be notice of any right of Daut's to the spring itself some 1,100 feet farther up the mountainside; but, as stated above, reasonable inquiry, if made before the purchase, would have divulged the terms of Teague's deed to Daut, including its reference to "that certain spring located in a canyon."

Appellant argues that even if reformation is to be allowed, a proper construction of the words "the right to a ditch and to laying pipes therein" is a right to pipe "then laying" in the ditch. This assault upon grammar is inconsistent with the precision of counsel's own writing, and also with that of the scrivener of the deed who, despite his deficiency in geographical description, makes clear by the whole paragraph that he used the word "laying" correctly, to describe the placing of pipes by the grantee or those claiming under him.

Besides the subject of reformation of the deed, based upon the notice discussed above, there is the matter of prescription. The diversion was continuous from 1928 to 1959, when defendant prevented it, and it has been adverse to defendant since 1948, when she bought the property. ▉ The use was for more than five years, was open, notorious, continuous, peaceable, and uninterrupted under a claim of right, and thus a prescriptive right was established. (*Scott* v. *Henry, supra,* p. 670; *O'Banion* v. *Borba,* 32 Cal.2d 145, 150 [195 P.2d 10]; *Wood* v. *Davidson, supra*; *Lindsay* v. *King, supra.*) Prescription not only confirms plaintiffs' rights arising from reformation of the deed, but also establishes plaintiffs' rights to that portion of the stream or rivulet (probably, from the evidence, a small portion) which is fed by streams other than the principal one.

▉ The general rule is that prescription may not go upstream. (51 Cal.Jur.2d, § 232, p. 690.) This means that because the lower riparian owner does not have a right to any

part of the waters needed by the upstream owner, if the upstream owner chooses to allow some water to which he is entitled to flow to the lower lands, the lower owner does not gain title to them by prescription. (Ibid.) There is an exception where the lower owner has gone upon the superior land and adversely and notoriously, for the term prescribed by law, taken water from the upper land. (*Lindsay* v. *King,* *supra,* p. 341.) ▪ Appellant recognizes this exception, but contends that because Daut's pipe terminated some 1,100 feet from the spring, there was not present a notorious use of the spring itself. Here, again, as when we were discussing the subject of notice sufficient to bring about reformation, we believe the evidence sufficient to sustain notorious user of the waters of the spring. Plaintiffs' catch basin diverted the entire flow of the stream during the dry months of the year; the spring supplied most of the waters of the stream; the trial court could conclude that defendant could hardly fail to know, over the years, that the entire flow of the spring was taken through Daut's pipe to Daut's land in the dry months.

Finally, appellant argues that even if reformation is granted and prescription established, the most that plaintiffs can acquire are riparian rights, because the waters of the spring naturally fall into the channel of the stream or rivulet, and an upper riparian owner does not have unlimited right to the water, but only to the beneficial use. Appellant argues that even if plaintiffs are able to establish rights on appellant's land, plaintiffs thereby become superior riparian owners, and are subject to the limitations which apply to all of that class. Appellant contends that plaintiffs did not establish, at the trial, their need to any particular portion of the water, but were awarded all of it except during the winter and spring, when there is plenty of water for all in the area.

▪ Appellant's statement that one who gains rights by prescription as a riparian owner may have only the amount of water which he can use beneficially, is correct. (51 Cal. Jur.2d 698, 699, 700, 702.) This case was tried, however, on the broad issue whether plaintiffs should prevail on reformation of the deed and by prescription, or whether defendant should prevail by her cross-complaint because the spring is on her land; it was not tried on the subject of excessive user on the part of either party as one conceded to be a superior riparian owner. The entire flow of the water of the rivulet and spring in the dry months had been taken by plaintiffs until 1959, and thereafter the entire flow in those months was

taken by defendant. The court in its judgment decided in favor of plaintiffs on the issues joined. If plaintiffs, established by the judgment as superior riparian owners, in the future take more water than they can use beneficially, perhaps relief may be given in another lawsuit. A judicial determination as to existing appropriative and riparian rights rests upon then present uses which may be quite different at a later time. (*Temescal Water Co.* v. *Department of Public Works*, 44 Cal. 2d 90, 106 [280 P.2d 1]; *United States* v. *Fallbrook Public Utility Dist.* (S.D.Cal.) 193 F.Supp. 342.)

Judgment affirmed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied December 12, 1962, and appellant's petition for a hearing by the Supreme Court was denied January 16, 1963.