[No. F051700. Fifth Dist. Apr. 3, 2008.]

LYLE BREWER et al., Plaintiffs and Respondents, v.
DEAN MURPHY et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part III.B. of Discussion.

## COUNSEL

Peter B. Brekhus & Associates, Peter B. Brekhus; Law Offices of John P. Brekhus and John P. Brekhus for Defendants and Appellants.

Jamison & Chappel and Gregory M. Chappel for Plaintiffs and Respondents.

OPINION

**DAWSON, J.**—After a bench trial, the court ruled that plaintiffs acquired prescriptive rights to take water from a spring on defendants' property and to maintain a water line across defendants' property for that purpose.

Defendants appeal, claiming the trial court's decision was based on legal error and its findings of fact were not supported by substantial evidence. Defendants contend that (1) post-1913 prescriptive rights to surface water are not recognized by California law, (2) substantial evidence does not support the finding that the water line was visible, open and notorious, (3) the purported visibility of the water line was not sufficient to provide constructive notice of the diversion of water from a spring unknown to defendants, and (4) plaintiffs failed to prove their use of the water and water line was hostile and adverse. We will reject each of these arguments and affirm the judgment.

Part II. of this opinion is published because it addresses a question noted and not resolved by the California Supreme Court—namely, "whether . . . prescriptive rights in [surface] water may be perfected as between private parties." (*People v. Shirokow* (1980) 26 Cal.3d 301, 312, fn. 15 [162 Cal.Rptr. 30, 605 P.2d 859].) We conclude that California law recognizes prescriptive water rights as between private parties in the circumstances presented by this case.

In part III. of this opinion, we conclude that substantial evidence supports the trial court's findings regarding open and notorious use that was hostile and adverse to defendants' rights. We publish the portion of part III. that explores new ground relating to the impact of recognition by the claimant of the record owner's rights.

## FACTS

Plaintiffs Lyle Brewer and Elizabeth Brewer acquired property in 1979 in eastern Fresno County. At the time of their purchase, the water source for the property was a spring located on a parcel now owned by defendants Dean Murphy and Keith Klein. The parcel owned by defendants is approximately one mile to the east of plaintiffs' property. The spring water is transported to plaintiffs' property through a galvanized pipe that runs from the spring, through a culvert beneath Tollhouse Road, and across other parcels until it reaches plaintiffs' property. Mr. Brewer testified that he has used the spring and water line to supply a house on his property since 1979.

Defendant Murphy acquired the parcel containing the spring in May 1984. The parcel contains 33.79 acres of land and is located approximately one and

a half miles northeast of Tollhouse, California. The parcel's western boundary is about half a mile long and fronts Tollhouse Road. The spring is located near Tollhouse Road in the parcel's southwest corner, which is steep terrain.

Defendant Murphy hunted on the mountain where his parcel is located when he was young. Despite his familiarity with the area, he did not know there was a spring on the property when he acquired it in 1984. He testified that in the many times he drove by the property on his way to and from Shaver Lake he never saw the water line. He also testified he had not seen the spring box until December 2005.

In 1989, defendant Murphy transferred an undivided one-half interest in the parcel to defendant Klein. Defendant Klein, an architect from South Lake Tahoe, looked at the property before the transaction and looked at it several times after the transaction. In 1989, he did not see the water line or the spring box, and he did not inspect the culverts running from the property under Tollhouse Road. He was not told and did not ask if there was a water source on the property.

Downhill from Tollhouse Road and defendants' parcel—that is, to the west—is a 49.22-acre parcel owned by Stephen Hagg. Mr. Hagg purchased the parcel in December 2000. The Hagg parcel occupies about three-quarters of a mile of road frontage between defendants' parcel and plaintiffs' property. There are a few parcels between Hagg's property and plaintiffs'. The water line from the spring to plaintiffs' property runs across the Hagg parcel.

The culvert through which the water line runs is made of corrugated metal pipe that is two feet in diameter. The culvert is beneath Tollhouse Road and a flat turnout area on the uphill, or east, side of Tollhouse Road. The turnout area was created using fill.[1] The bottom of the culvert is about three feet lower than the surface of the turnout area. The testimony of the parties regarding the visibility of the water line to someone standing at the edge of the fill and looking down at the culvert is set forth in more detail in the unpublished portion of this case.

The spring box is located in the bed of an intermittent stream. It is made of concrete and is approximately two feet square. The spring box is up a ravine or gully approximately 100 to 125 feet east of the culvert. The elevation of

---

[1] The turnout area is depicted in photographs introduced as part of exhibit No. 302.

the spring box is about 30 feet higher than the road. The 70 to 100 feet of water line closest to the culvert is above ground, while the portion nearest the spring box is buried.[2]

Shortly after Mr. Hagg acquired the parcel, Mr. Brewer and he had a discussion about the water line, and Mr. Brewer told him not to connect to the water line. Nevertheless, Mr. Hagg tapped into the water line and used water for a horse trough. As a result, plaintiffs filed a lawsuit against Mr. Hagg and Olivia Hagg to stop their interference with the water line.

While the litigation with the Haggs was pending, plaintiffs filed an application to appropriate unappropriated water with the California State Water Resources Control Board (SWRCB) for the purpose of obtaining a permit to divert the water at the spring. In completing item 3.d of the application, which asks what steps have been taken to obtain right to access, plaintiffs responded "pre-existing." Item 10 of the application is titled "Existing Water Right" and asks the applicant to check one of three boxes. Box B corresponds to a statement that "Applicant claims an existing right for use of water sought by this application but agrees NOT to exercise said right so long as a permit or license for such use remains in effect." Box C corresponds to a statement that the "water sought by this application is for additional water over that claimed under an existing right." Plaintiffs did not check any of the boxes, but a question mark was placed in the margin to the right of boxes B and C. In a table below the boxes, which is to be completed if box B or C is checked, plaintiffs indicated that the nature of their rights were "appropriative," the year of first use was 1979, the use was year round for residential, garden and livestock, and the source was a spring.

Mr. Brewer testified that he believed he had an existing right to use the water from the spring. Defendants did not contest plaintiffs' application.

In September 2001, the SWRCB issued certificate No. R-599 to plaintiffs, which stated that the water appropriated was limited to 3,000 gallons per day and the maximum amount diverted was limited to 3.2 acre-feet per year. The certificate also stated the appropriation was subject to prior rights and "this registration shall not be construed as conferring upon the registrant the right of access to the point of diversion."

In February 2002, before the lawsuit between plaintiffs and the Haggs was finished, Mr. Hagg filed a water right complaint with the SWRCB.

In July 2002, plaintiffs obtained a judgment against the Haggs. The judgment decreed that plaintiffs were the sole owners of an easement 20 feet

---

[2] A factual dispute existed regarding the visibility of the water line. Additional facts regarding the visibility of the water line and spring box are set forth later in this opinion.

wide for the use, maintenance, operation and repair of the water line situated on the Haggs' parcel. The judgment enjoined the Haggs from interfering with plaintiffs' use of the easement, prohibited the Haggs from extracting water from the existing water line, and required them to remove a T-intersection that had been installed into the water line.

Approximately two months after the entry of the judgment, the SWRCB issued its report on Mr. Hagg's water right complaint. The SWRCB's September 13, 2002, report stated: "[T]o the extent that water would reach the Hagg property, he would be able to use water pursuant to a riparian right. Likewise, to the extent that water would reach the Hardwick and Brewer properties, they would be able to use water under riparian right. During the wet months (winter and spring) there may be sufficient flow to reach all of the properties and allow each owner to divert under a riparian claim of right. However, during the dry season it is not likely that water would reach either the Brewer or Hardwick properties that are located almost a mile downstream." The SWRCB's report concluded that (1) plaintiffs' certificate No. R-599 should not be revoked as long as plaintiffs fully complied with its require- ments and (2) "direct diversion of the spring water for use on the Hagg property could be made under . . . a claim of right [as an upper riparian]."[3] The staff of the SWRCB advised plaintiffs that they should get permission from defendants to access the property on which the spring was located.

As a result, in late September 2002, plaintiffs contacted defendants about obtaining permission for access to the spring. The negotiations between plaintiffs and defendants are reflected in part in a series of letters exchanged during September and October 2002. The negotiations did not lead to an agreement between plaintiffs and defendants. One point of disagreement was defendants' requirement that plaintiffs abandon their claim to any prior rights.

In contrast to plaintiffs, Mr. Hagg was able to reach an agreement with defendants and, under that agreement, ran a separate PVC pipe from his property to the spring box.

## PROCEEDINGS

On August 8, 2003, plaintiffs filed suit against defendants and others seeking injunctive relief and a judgment to quiet title. Specifically, plaintiffs requested a judgment acknowledging they owned a prescriptive easement to

---

[3] A December 23, 2002, letter from the Division of Water Rights of the SWRCB stated that, "[b]ased on the available information, staff of the Complaint Unit of the Division of Water Rights has concluded that the Hagg property is riparian to the flow from the spring source on the Murphy/Klein property."

extract water from the spring and transport the water through the existing water line across defendants' property to their residence.

A two-day court trial began on December 27, 2005.

The trial court filed its statement of decision on October 10, 2006, which stated that "plaintiffs have met their burden of proof with respect to the establishment of their right to an easement by prescription. [Citations.] The extent of the easement would be for the maintenance, operation, and repair of the waterline and the right to divert in accordance with [the] permit issued by the State of California up to 3,000 gallons per day with a maximum diversion per year not to exceed 3.2 acre feet."

Judgment was filed in favor of plaintiffs on October 27, 2006.

## DISCUSSION

I. *Standards of Review*

When an appellate court reviews a statement of decision issued by a trial court, questions of fact are reviewed under a standard different from that applied to questions of law. (*Brasher's Cascade Auto Auction v. Valley Auto Sales & Leasing* (2004) 119 Cal.App.4th 1038, 1048 [15 Cal.Rptr.3d 70].)

A. *Findings of Fact*

The trial court's findings on questions of fact are reviewed under the substantial evidence standard. (*Crawford v. Southern Pacific Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183] [substantial evidence rule].) That standard for review has been described by our Supreme Court as follows: "Where findings of fact are challenged on a civil appeal, we are bound by the 'elementary, but often overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the findings below. (*Crawford v. Southern Pacific Co.*[, *supra*,] 3 Cal.2d 427, 429.) We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court." (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660 [190 Cal.Rptr. 355, 660 P.2d 813].)

Evidence is "substantial" for purposes of this standard of review if it is "of 'ponderable legal significance,' 'reasonable in nature, credible, and of solid

value' . . . . [Citations.]" (*Grappo v. Coventry Financial Corp.* (1991) 235 Cal.App.3d 496, 507 [286 Cal.Rptr. 714].)

### B. *Conclusions of Law*

A trial court's conclusions of law are subject to independent review by an appellate court. (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 801 [35 Cal.Rptr.2d 418, 883 P.2d 960] [questions of law are subject to independent review].) In other words, an appellate court decides a question of law without deference to how it was answered below. (*Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1492 [35 Cal.Rptr.3d 596].)

## II. *Prescriptive Rights and Riparian Users*

### A. *Contentions of the Parties*

Defendants argue that "by law, water rights may not be acquired by adverse possession, because the California Water Code provides the exclusive means of acquiring appropriated water." Plaintiffs contend that, because they are riparian landowners, they fall within an exception to this rule. Defendants respond by asserting that plaintiffs are not riparian landowners because their property is not adjacent to a watercourse emanating from defendants' property.[4]

### B. *Legal Issue Presented on Appeal*

In support of the proposition that water rights cannot be obtained by prescription, defendants rely on the California Supreme Court's decision in *People v. Shirokow, supra,* 26 Cal.3d 301. There, an upstream landowner impounded stream water behind a dam and used the water for livestock and irrigation. (*Id.* at p. 305.) The landowner had not obtained a permit from the SWRCB. (*Ibid.*) The state sought an injunction against the diversion, arguing it constituted a trespass under Water Code section 1052. (*People v. Shirokow, supra,* at p. 305.) The landowner argued that he had acquired a prescriptive right against all downstream users and the state and, therefore, his use of the water could not be enjoined. (*Id.* at p. 306.) The court rejected the landowner's argument and reversed, holding that a claim of prescriptive rights in

---

[4] Defendants' assertion of fact regarding the relative position of plaintiffs' property to any watercourse emanating from defendants' property was not supported by a citation to the record. Factual assertions in an appellate brief should be supported with specific citations to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C) [volume and page number required]; *Wal-Mart Stores, Inc. v. City of Turlock* (2006) 138 Cal.App.4th 273, 292 [41 Cal.Rptr.3d 420].)

water cannot lie as against the state when the state seeks to enjoin unauthorized use pursuant to Water Code section 1052. (*People v. Shirokow, supra,* 26 Cal.3d at p. 312, fn. 15.) The court limited the scope of its decision, however, by stating that it did not "reach the question of whether and under what circumstances prescriptive rights in water may be perfected as between private parties." (*Ibid.*)

At least two opinions that predate *Shirokow* hold that a lower riparian owner who directly diverts water from an upper riparian owner's land may acquire prescriptive water rights as a result of adverse use. (*Lindsay v. King* (1956) 138 Cal.App.2d 333, 341 [292 P.2d 23]; see *Saxon v. DuBois* (1962) 209 Cal.App.2d 713, 720 [26 Cal.Rptr. 196] [following *Lindsay v. King*]; 62 Cal.Jur.3d (2005) Water, § 200, pp. 261–263 [prescriptive water rights running upstream].) Defendants have failed to convince us that these authorities should not be followed.[5] Accordingly, as did the trial court, we reject defendants' contention that the Water Code presented the exclusive method by which plaintiffs could obtain rights to water from the spring.

### C. *Factual Issues Challenged on Appeal*

The contentions of the parties raise the questions whether plaintiffs' property is adjacent to a watercourse and whether that watercourse emanates from defendants' property. We must examine the record to determine if substantial evidence supports plaintiffs' factual assertions. (See pt. I.A., *ante.*)

Mr. Brewer testified that the spring box was located within an intermittent stream that ran from defendants' property to his property. He also testified that the stream ran from the spring box toward the culvert. Various photographs showed the spring box, water line running from the spring box, the dry stream bed, and the culvert.

Mr. Klein testified that, "[a]s the water board referred to it, it is an intermittent-flow stream, which means it does not hold water year round. It

---

[5] We are aware that, in *City of Barstow v. Mojave Water Agency* (2000) 23 Cal.4th 1224 [99 Cal.Rptr.2d 294, 5 P.3d 853], the California Supreme Court quoted a decision of the Court of Appeal that stated the actual, wrongful taking of water may ripen into a prescriptive right. (*Id.* at p. 1241, quoting *California Water Service Co. v. Edward Sidebotham & Son* (1964) 224 Cal.App.2d 715, 725 [37 Cal.Rptr. 1].) We do not consider that statement as controlling, however, because the rights contested in those two cases concerned groundwater, not surface water.

Also, this court's statements regarding prescription in *North Kern Water Storage Dist. v. Kern Delta Water Dist.* (2007) 147 Cal.App.4th 555 [54 Cal.Rptr.3d 578] did not answer the legal question presented here because that case involved rights to surface water that arose prior to 1914 and the effective date of the Water Commission Act. (*North Kern Water Storage Dist.*, at pp. 559 & 583, fns. 1 & 16.) The principles applicable to pre-1914 rights do not necessarily apply to post-1913 rights, and this appeal involves post-1913 rights.

only runs water when it rains." He also testified that he had not seen any water running from his property to other properties.

Mr. Hagg, the owner of property located between defendants' property and plaintiffs' property, testified that the creek originated on defendants' property and flowed down to his property. He testified that the water line was in a heavily vegetated creek bed.

We conclude Mr. Brewer's testimony, Mr. Hagg's testimony, and the related photographs and documents constitute substantial evidence to show that an intermittent stream existed and that plaintiffs were lower riparian owners. Accordingly, we reject defendants' assertion, which has not been supported by citations to the record, that plaintiffs' land was not adjacent to a watercourse emanating from defendants' property.

### III. *Sufficiency of Proof of the Elements of Prescription*

#### A. *Essential Elements of a Prescriptive Rights Claim*

■ The elements that create a claim of prescriptive water right, like a claim for prescriptive easement, include use that is (1) actual, (2) open and notorious, (3) hostile and adverse to the original owner, (4) continuous and uninterrupted, (5) under a claim of right, (6) for the statutory period of five years. (Civ. Code, § 1007; *City of Barstow v. Mojave Water Agency, supra*, 23 Cal.4th at p. 1241; see also *Saxon v. DuBois, supra*, 209 Cal.App.2d at p. 719 [prescriptive water right is established when "[t]he use was for more than five years, was open, notorious, continuous, peaceable, and uninterrupted under a claim of right . . ."].)

■ Whether the elements of prescription are established is a question of fact for the trial court. (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570 [199 Cal.Rptr. 773, 676 P.2d 584].)

The trial court's findings regarding the existence of a prescriptive easement must be based on clear and convincing evidence. (*Applegate v. Ota* (1983) 146 Cal.App.3d 702, 708 [194 Cal.Rptr. 331].) Nevertheless, if substantial evidence supports the trial court's findings, the findings will be upheld by an appellate court. (*Ibid.*) Also, "[t]he usual rule of conflicting evidence is applied, giving full effect to respondents' evidence, however slight, and disregarding appellant's evidence, however strong. [Citations.]" (*Ibid.*)

■ The elements necessary to establish a prescriptive easement "are designed to insure that the owner of the real property which is being encroached upon has actual or constructive notice of the adverse use and to

provide sufficient time to take necessary action to prevent that adverse use from ripening into a prescriptive easement." (*Zimmer v. Dykstra* (1974) 39 Cal.App.3d 422, 431 [114 Cal.Rptr. 380].)

### B. *Open and Notorious**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C. *Hostility and Recognition of the Record Owner's Rights*

#### 1. *Contentions of the parties*

Defendants argue that plaintiffs failed to prove their water use and occupation of defendants' property was hostile and adverse. Their argument is based on the legal proposition that a claimant's use and possession is not hostile and adverse unless it is " 'unaccompanied by any recognition, express or inferable from the circumstances of the right in the [record owner].' (4 Tiffany, Real Property [3d ed.], 425.)" (*Sorensen v. Costa* (1948) 32 Cal.2d 453, 459 [196 P.2d 900] (*Sorensen*).)

Plaintiffs assert that the evidence shows Mr. Brewer consistently asserted and claimed existing rights throughout his battles and negotiations with his neighbors. They contend that substantial evidence supports the trial court's finding that the element of hostility was satisfied.

#### 2. *Issues presented*

First, we must determine what the California Supreme Court meant when it referred to " 'any recognition . . . of the right [of the record owner.]' " (*Sorensen, supra*, 32 Cal.2d at p. 459.) Then we must apply that meaning to the facts of this case. Specifically, did plaintiffs "recognize" the rights of defendants and therefore come within the principle of law set forth in *Sorensen*.

#### 3. *Meaning of the principle stated in* Sorensen

Our examination of the meaning of the principle stated in *Sorensen* begins by placing that principle in context. We do so by looking at the situations it was designed to address.

▮ In *Gilardi v. Hallam* (1981) 30 Cal.3d 317 [178 Cal.Rptr. 624, 636 P.2d 588] (*Gilardi*), the California Supreme Court discussed the elements

---

*See footnote, *ante*, page 928.

of (1) a claim of right and (2) use or possession hostile to the true owner. "[T]he rule is settled in California that the requisite hostile possession and claim of right may be established when the occupancy or use occurred through mistake. In *Woodward v. Faris* (1895) 109 Cal. 12, 17 [41 P. 781], the court pointed out that most cases of adverse possession commenced in mistake and that the possession must be by mistake or deliberately wrong." (*Gilardi, supra*, 30 Cal.3d at p. 322.)

The court in *Gilardi* also identified an exception to the mistake rule. Where land is occupied through mistake as to the property line *with the intention to claim only to the true line*, wherever it may be, a claim for adverse possession of the mistakenly occupied land will be denied. (*Gilardi, supra*, 30 Cal.3d at p. 322.) The court in *Gilardi* observed that it had discussed the mistake rule and its exception in *Sorensen* and "pointed out that the hostility requirement 'means, not that the parties must have a dispute as to the title during the period of possession, but that the claimant's possession must be adverse to the record owner, "unaccompanied by any recognition, express or inferable from the circumstances of the right in the latter." ' ([*Sorensen, supra*,] 32 Cal.2d at p. 459.)" (*Gilardi, supra*, 30 Cal.3d at pp. 322–323.) In effect, the exception requires the claimant to act consistently with respect to the rights claimed. Consequently, a claimant's use or occupancy will not be deemed hostile to the rights of another if the claimant simultaneously acknowledges those rights.

■ The exception regarding the recognition of another's right is applied most easily in cases where the claimant asserts full ownership, or at least the right to exclusive and continuous use, of land. (E.g., *Otay Water Dist. v. Beckwith* (1991) 1 Cal.App.4th 1041, 1045–1047 [3 Cal.Rptr.2d 223] [water district built fence around a reservoir that included defendant's land and sued to quiet title to prescriptive easement for exclusive and continuous use of land].) In contrast, when a limited prescriptive easement is claimed, the rights embodied in that easement will not negate all of the rights of the record owner. Thus, a claimant of a prescriptive easement can acknowledge that the record owner holds some rights and still act consistent with a hostile intent insofar as the prescriptive rights are concerned.

■ Based on the foregoing, we conclude that when the California Supreme Court referred to " 'any recognition . . . of the right [of the record owner]' " in *Sorensen, supra*, 32 Cal.2d at page 459, it meant the recognition by the claimant of the same right or rights asserted by the claimant. In other words, a claimant cannot show the use of a right was hostile when, simultaneous to that use, the claimant recognized that the very same right was held by the owner of record.

4. *Rights recognized by plaintiffs*

Defendants argue that (1) plaintiffs recognized defendants' rights in the water from the spring and to the land over which the water line ran and (2) this recognition negated any inference that plaintiffs' use of the water and land was hostile. Defendants support their argument by referring to the testimony of Mr. Brewer and letters admitted into evidence at trial.

The correspondence between Mr. Brewer and defendants shows that Mr. Brewer claimed an existing right to water from the spring during the course of their negotiations. For example, in a letter dated September 27, 2002, defendants wrote to Mr. Brewer regarding their telephone conversations regarding permission given to Mr. Brewer to take water from the spring. That letter stated: "You have that permission which is revocable with a thirty-day notice. However, your embellishment as to prior rights or exclusivity is not something that I acknowledge nor anything we discussed. If you accept my offer of permission to use this spring I will consider that you have abandoned any such allegation."

Similarly, in a letter dated October 7, 2002, Mr. Murphy stated: "Let us be quite clear if you do not waive any alleged prior claim to my spring you do not have permission to use the aforementioned spring."

The correspondence and testimony shows that plaintiffs asserted a prior claim to the spring water during the course of negotiations with defendants. Plaintiffs' assertions show they claimed rights to use the water that were adverse and hostile to the rights claimed by defendants. The fact plaintiffs engaged in negotiations in an attempt to reach an agreement did not require the trial court to find that (1) plaintiffs did not intend to claim rights adverse and hostile to defendants or (2) plaintiffs expressly or implicitly recognized that defendants held the rights that plaintiffs were claiming.

■ Consequently, we reject defendants' argument as to why plaintiffs' use of the water and water line was not hostile and adverse to defendants' rights. Furthermore, we conclude that substantial evidence supports the trial court's finding that plaintiffs asserted a claim of right that was hostile and adverse to defendants' rights to the water and to defendants' exclusive use of the land over which the water line ran.

## DISPOSITION

The judgment is affirmed. Plaintiffs shall recover their costs on appeal.

Harris, Acting P. J., and Levy, J., concurred.