Filed 7/24/13  Marriage of Schmitt CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of JACQUELINE and DAVID SCHMITT. | |
| JACQUELINE SCHMITT,<br><br>    Respondent,<br><br>    v.<br><br>DAVID SCHMITT,<br><br>    Appellant. | F065650<br><br>(Super. Ct. No. M-1502-FL-3753)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kern County.  John D. Oglesby, Judge.

David Schmitt, in pro. per., for Appellant.

No appearance for Respondent.

-ooOoo-

In this appeal, a husband challenges the trial court's decision to uphold a marital settlement agreement. He contends the agreement was unenforceable on the grounds of duress, undue influence, fraud, and his lack of mental capacity.

Husband's ability to establish these grounds on appeal is hampered by the fact that (1) he did not object to any ambiguities or omissions in the statement of decision while the matter was before the trial court and (2) the record on appeal does not contain a reporter's transcript of the oral testimony heard by the trial court.

Based on the rules of law that require an appellant to affirmatively demonstrate reversible error, which include a requirement for presenting an adequate record for assessing the errors asserted, we conclude that the husband has failed to establish the grounds on which he claims the agreement is unenforceable and, thus, has failed to affirmatively show the trial court erred.

We therefore affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Appellant David Schmitt (David) and respondent Jacqueline Schmitt (Jacqueline) were married in November 2007. It was the second time they were married to each other. They have a daughter who was born in the spring of 1996.

On May 7, 2010, they entered into a written postnuptial agreement for the purpose of defining their respective rights in property owned separately, jointly or as community property. The agreement also was signed by the lawyers representing David and Jacqueline. The enforceability of this agreement, which later became a marital settlement agreement, is the primary issue in this appeal as David has asserted several arguments for why the agreement is invalid.

David's July 2012 declaration asserts that (1) in April 2010 he believed his mind was not rational, he was not of sound mind, and he was not in control of himself; (2) he was extremely depressed and thought about suicide or committing himself; (3) Jacqueline pressured him to enter into the agreement knowing that he lacked the requisite mental

2.

capacity; and (4) he did not want to sign the agreement, but believed he had no choice. David offers these assertions to support his position that when he signed the postnuptial agreement in May 2010 he lacked the mental capacity necessary to form a valid contract.

Attached to the declaration was a letter written by David and dated April 27, 2010. The letter asserted that Jacqueline told David that if he did not sign the agreement, she would divorce him and take their daughter.[1] The letter also asserted that David feared for his safety and for the well-being of his daughter if he did not sign the agreement.

David's declaration also addressed Jacqueline's awareness of his mental disability. It stated that on August 1, 2010, Jacqueline insisted David seek help for his mental problems and, the next day, reiterated that he really needed help. A week later, Jacqueline told David that he should have taken her advice and gotten help for his mental issues years ago.

On August 16, 2010, Jacqueline filed a petition for dissolution of marriage.

On September 13, 2010, Jacqueline and David executed an amendment to the postnuptial agreement that changed it into a marital settlement agreement. The notary that witnessed their signatures on the amendment completed an acknowledgement that stated the signers represented themselves.

On September 18, 2010, the martial settlement agreement was amended to address matters such as custody of their daughter, visitation, child support, spousal support, certain debts and expenses, and insurance. As to personal property and financial accounts, the amendment referred to the earlier pages of the marital settlement agreement. Again, the notary's acknowledgement stated that the signers represented themselves.

---

[1] In contrast, the third recital of the postnuptial agreement stated that the "parties do not presently contemplate a separation and have no intention of obtaining a dissolution of marriage."

On October 29, 2010, a judgment of legal separation was filed. The marital settlement agreement was attached to the judgment. Among other things, the judgment ordered a division of property as set forth in the settlement agreement, which was attached and incorporated into the judgment. Paragraph 13 of the settlement agreement provided that David's interest in funds held by a Supplemental Employee Incentive Plan (SEIP) would become community property. Exhibit D to the settlement agreement identified four parcels of real property that were to be treated as Jacqueline's separate property.

In November 2010, David was admitted to Del Amo Hospital and underwent an evaluation of his mental health. Dr. Peter Hirsch was the attending physician and determined that David was 100 percent disabled. Dr. Hirsch indicated that, among other things, the goal of David's hospitalization was the alleviation of suicidal risk, the decrease in symptoms of depression and anxiety, and the achievement of a level of psychosocial functioning such that David's treatment could continue in a less acute treatment setting. Subsequently, in February 2011, Dr. Hirsch again determined that David was 100 percent disabled.

In June 2011, David filed an order to show cause to set aside the judgment and review child custody, child visitation and attorney fees. David contends that this challenge to the judgment was not resolved by the court due to Jacqueline's reconciliation attempt.

In November 2011, Jacqueline filed an order to show cause to set aside the marital settlement agreement. The matter was continued twice and it and other matters were heard on March 7, 2012. The March 7, 2012, minute order of the trial court states:

> "The court makes the following findings and orders: The agreement was entered into during the marriage which was attached to the judgment of legal separation. The agreement is amended as requested by [Jacqueline]. The court's tentative ruling is that from the date the parties signed the agreement it is valid. The agreement is not retroactive and the court would

4.

assign [David] a 35% share of the home.  The court will entertain argument by way of brief on the matter before making a final ruling.  The agreement is one sided and was signed under some duress.  [David] had counsel at the time of the signing.  Written argument by way of brief shall be to the court not late[r] than 4/16/12, thereafter the matter is submitted.  [¶]  [Jacqueline] may provide future evidence regarding the percentage given to [David].  Ruling to be given in court on 4/23/12."  (Some capitalization omitted.)

In April 2012, a stipulation to continue and order was filed.  On May 4, 2012, the trial court filed a minute order that described itself as a statement of decision on the issue of the validity of the marital (postnuptial) agreement that was incorporated into the judgment.

The statement of decision indicated that Jacqueline sought to enforce the marital agreement that had been incorporated into the October 29, 2010, judgment and David sought to have the judgment set aside on the grounds of ambiguity and unenforceability.

The statement of decision described the agreement as identifying the assets and debts of the parties and providing for a division in favor of Jacqueline.  The statement of decision indicated that two significant inequalities in the division of property involved (1) the residence held by Jacqueline and (2) the SEIP held by David.  When they married for the second time in 2007, the residence was Jacqueline's separate property and the SEIP was David's separate property.  During the marriage, David built an addition to the residence, which substantially increased its size.  The agreement provided that David would have no claim on the residence or the improvements made by him.  As to the SEIP, the agreement provided that it would become community property, including David's separate property portion that was worth about $80,000.

The statement of decision included the trial court's finding that both parties were represented by counsel when the marital agreement was signed and again when its terms were incorporated into the judgment of legal separation.  The court stated it "originally had some concern regarding the enforceability of the agreement regarding its fairness and as it appear[ed] to encourage [Jacqueline] to seek a dissolution" (full capitalization

5.

omitted) because of the financial incentives it created. Notwithstanding its original concern regarding enforceability, the court stated that it was not against public policy for a party to knowingly and voluntarily agree to an unequal division of community and separate property, especially when the parties are represented by counsel, have been previously married to one another and are seeking a legal separation of their second marriage, and have teenage child whom they are jointly raising. The court also stated that it saw no reason to undo the agreement even if in retrospect David considered it a bad deal.

The trial court addressed David's equitable arguments by stating that "in light of [David's] altering of the document before it was filed with the court[,] the court sees no equitable reason to grant … relief as well." (Full capitalization omitted.)

Based on the foregoing findings and analysis, the court concluded that the judgment, which included the agreement, was valid and enforceable.

David responded to the trial court's statement of decision by requesting reconsideration and a review hearing. In support of his motion for reconsideration, David submitted a declaration that addressed his mental capacity at the time he signed the marital settlement agreement, Jacqueline's knowledge of his mental issues, and the subsequent diagnosis of his mental disability.

The trial court held the requested review hearing on July 23, 2012. At that hearing, both David and Jacqueline were sworn and testified. The minute order dated July 23, 2012, indicates that David argued that he recently discovered that his mental disability made him incapable of making any decisions and entering into an agreement or contract and, because of the recent discovery, the information was not previously presented in court.

The trial court found: "After hearing [David's] testimony[, the] court is not persuaded by his testimony. [David] has not provided burden of proof to re-open case. [David's] motion [is] denied." (Full capitalization omitted.)

6.

On August 9, 2012, David filed a notice of appeal that stated he was appealing from the judgment or order entered on May 4, 2012. David's notice of designation of record on appeal checked none of the boxes indicating whether he elected to proceed with or without a record of the oral proceedings in the superior court. As a result, the appellate record contains no reporter's transcripts, agreed statement or settled statement of the oral proceedings (which proceedings would include the parties' testimony) held in the superior court.

## DISCUSSION

David is representing himself in this appeal. His opening brief contends the marital agreement is unenforceable because (1) he proved duress, (2) the agreement was unfair and thus voidable as a matter for law, (3) the agreement was obtained by intrinsic and extrinsic fraud, (4) the agreement should be set aside due to his unsound mind, and (5) the fact he had an attorney, chosen and paid by Jacqueline, did not negate her undue influence. David raises additional issues, including whether the judgment was premature and whether a new trial should be required.

Jacqueline did not file a respondent's brief. Instead, she sent a one-paragraph letter stating she did not have the funds to obtain appellate counsel and asked this court to note that the trial court found David had forged the marital agreement filed with the court in 2010 and his appeal is simply a disagreement with the trial court's view of the facts.[2]

---

[2] Pursuant to California Rules of Court, rule 8.220(a)(2), when a respondent fails to file a respondent's brief, the appellate court "may decide the appeal on the record, opening brief, and any oral argument by the appellant." Thus, we will not treat Jacqueline's failure to file a respondent's brief as a default or an admission that the trial court erred. (*In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1078, fn. 1.) Instead, we will check the accuracy of the appellant's statement of facts and evaluate the merits of his legal arguments to determine whether prejudicial error occurred. (See *In re Bryce C.* (1995) 12 Cal.4th 226, 232-233.)

7.

I.     RULES OF APPELLATE PROCEDURE

A.     Applicable Standards of Review

When an appellate court reviews a trial court's statement of decision, the trial court's findings of fact are reviewed under the substantial evidence standard and the trial court's resolution of a question of law is subject to independent review. (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 935.)

A trial court's findings of fact will be upheld if there is substantial evidence, contradicted or uncontradicted, to support the finding. (*Brewer v. Murphy*, *supra*, 161 Cal.App.4th at p. 935.) In evaluating the support for a finding, we must view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor. (*Ibid.*) Furthermore, evidence is defined as "substantial" for purposes of this standard of review if it is of ponderable legal significance, reasonable in nature, credible and of solid value. (*Id.* at pp. 935-936.) For example, the testimony of a single witness, even a party in an action for the dissolution of marriage, constitutes substantial evidence. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

B.     Appellant's Burden of Demonstrating Error

It is a well established rule of appellate procedure that the judgment or order of the lower court is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) To overcome this presumption, an appellant challenging a judgment or order must affirmatively demonstrate prejudicial error. (*Ibid.*)

For example, when an appellant contends a finding of fact is wrong, the appellant has the burden of demonstrating that the record lacks substantial evidence to support that finding of fact. (*Boeken v. Philip Morris Inc.* (2005) 127 Cal.App.4th 1640, 1658.) To demonstrate the absence of substantial evidence, the appellant must provide the appellate court with an adequate record of the lower court's proceedings. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574.) In *Ballard*, the plaintiff failed to include a reporter's transcript of

8.

the portion of the trial relating to the issue of damages. The court stated that because of the absence of a transcript or settled statement regarding that portion of the trial it had no way of ascertaining whether the alleged juror misconduct or instructional error affected the damages awarded in the case. (*Ibid.*) As a result, the court concluded the plaintiff failed to provide an adequate record and therefore failed to carry the burden of showing prejudicial error. (*Ibid.*)

II.     DURESS, UNDUE INFLUENCE AND UNFAIRNESS

      A.     <u>Finding of Duress</u>

David refers to the trial court's March 7, 2012, minute order and asserts that the court found there was duress and undue influence against him. The minute order includes the following sentence: "The agreement is one sided and was signed under some duress." (Some capitalization omitted.)

The trial court's statement that the agreement was signed under some duress was not a finding ultimately adopted by the trial court. Instead, the statement was part of the tentative ruling made by the court in the March 7, 2012, minute order. Subsequently, in the statement of decision, the court stated it "originally had some concern regarding the enforceability of the agreement .…" (Full capitalization omitted.) Despite this original concern, the court found the agreement was valid and enforceable. Therefore, the court's tentative finding of some duress has no force or effect and did not become part of the court's final decision.

Consequently, we reject David's position that duress was proven. Instead, the record shows that the trial court was aware of the issue concerning duress and still concluded the agreement was enforceable. Under the applicable rule of appellate review, we are required to conclude that the trial court impliedly found David was not under duress when he signed the agreement. (See *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1134 [appellate court will imply findings in support of judgment where

9.

missing findings are not brought to attention of trial court]; *Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564 [courts indulge all presumptions in favor of the judgment].)

B.      Presumption of Undue Influence and Family Code Section 721

When an interspousal transfer of property advantages one spouse to the disadvantage of the other, a presumption arises that the transaction was the result of undue influence.  (Fam. Code, § 721; *In re Marriage of Delaney* (2003) 111 Cal.App.4th 991, 996.)  The spouse advantaged by the transaction must show by a preponderance of the evidence that the advantage was not gained in violation of the fiduciary relationship between spouses.  (*In re Marriage of Fossum* (2011) 192 Cal.App.4th 336, 344.)  The spouse advantaged by the transaction has the burden of proving that the transaction was freely and voluntarily made, with full knowledge of the facts, and with complete understanding as to the transaction's effect.  (*In re Marriage of Mathews* (2005) 133 Cal.App.4th 624, 630.)

Here, David refers to the statutory presumption of undue influence and contends the trial court never required Jacqueline to rebut the presumption by a preponderance of the evidence.  To prevail on this argument, David must demonstrate that the trial court failed to decide whether the presumption was rebutted.

The statement of decision does not contain an explicit reference to the presumption or Family Code section 721.  The statement of decision did mention, however, that a party may knowingly and voluntarily agree to an unequal division of property and then stated it saw no reason to undo the agreement.  This language can be interpreted in different ways regarding the questions whether the trial court was aware of the presumption of undue influence and whether the court required Jacqueline to rebut that presumption by a preponderance of the evidence.

10.

David interprets the statement of decision as failing to address these questions and, therefore, takes the view that the trial court did not require Jacqueline to rebut the presumption.

Under the applicable rules of law, a party claiming omissions or ambiguities in the factual findings in a statement of decision must bring those omissions or ambiguities to the trial court's attention pursuant to Code of Civil Procedure section 634 before such objections will be considered by an appellate court. In other words, "if a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient in these regards, and hence the appellate court will imply findings to support the judgment." (*In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at pp. 1133-1134.) The rationale for this rule is that it would be unfair and inefficient to allow a party to lull the trial court and opposing party into believing the statement of decision was adequate and then claim error on appeal when the asserted error could have been clarified before the trial court. (*Id*. at p. 1138.)

Nothing in the record before this court demonstrates that David objected to the failure of the statement of decision to explicitly address whether Jacqueline had proven by a preponderance of the evidence that David entered the agreement freely and voluntarily, with full knowledge of the facts, and with complete understanding as to the agreement's effect on his property interests.

Therefore, under the rules regarding statements of decision set forth by the California Supreme Court in *In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at pages 1133 to 1134, we conclude that David has not demonstrated that the trial court failed to find that Jacqueline proved the agreement was entered freely and voluntarily, with David's full knowledge of the facts and complete understanding as to the impact on his property interests. Under those rules of law, such a finding is implicit in the trial court's broad statement that it could see no reason to undo the agreement.

11.

C.     Separate Counsel and Rebutting Presumption

David contends:  "Probative proof that ag[grieved] spouse had separate legal counsel or the opportunity to obtain such advice is not essential to a rebuttal of the undue influence presumption."  He also contends that the fact that he had legal counsel did not relieve Jacqueline of her fiduciary obligation in the negotiating of the agreement.

Without supporting citations to the record, David asserts that he was told to go to a particular attorney and tell the attorney that he was needed just to acknowledge the signature on the agreement, which had been prepared by Jacqueline and her attorney within the two weeks prior to the signing of the agreement.  David also asserts that, besides choosing his attorney, Jacqueline also paid the attorney.

We agree with David's view of the law that the fact that the spouse challenging a marital agreement had legal representation does not *automatically* rebut the presumption of undue influence established by Family Code section 721.  (See *Vai v. Bank of America* (1961) 56 Cal.2d 329, 339-340 [husband not released from fiduciary obligation as a result of wife employing attorney to negotiate agreement].)

Our agreement on this point of law, however, does not lead us to conclude that Jacqueline did not rebut the presumption.  For the reasons stated in the prior section of this opinion, we conclude that David may not argue on appeal that the trial court erroneously failed to address the presumption of undue influence because he has not shown that he made such an objection in the trial court and gave the court an opportunity to correct any such omission.  (See *In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at pp. 1133-1134; Code Civ. Proc., § 634.)

D.     Unfair Advantage

David also argues that the trial court found Jacqueline gained an unfair advantage over him by virtue of the agreement.  David refers to the court's tentative ruling of March 7, 2012, which states that "the agreement is one sided."  David then reiterates his position

that "the court erred in never requiring Jacqueline to rebut the undue influence and duress issue that arises from such inter-spousal transactions .…"

First, the trial court's statement that "the agreement is one sided" was part of the tentative ruling and was not included in the statement of decision, which is the final and operative expression of the trial court's determinations for purposes of this appeal. Second, applicable law requires this court to conclude that the trial court impliedly found Jacqueline presented sufficient evidence to rebut the presumption of undue influence. (*In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at p. 1133-1134.) Therefore, David's unfairness argument fails to demonstrate prejudicial error because the record presented does not establish that the trial court failed to require Jacqueline to rebut the presumption of undue influence.

## III. INTRINSIC AND EXTRINSIC FRAUD

David contends the trial court erred in failing to set aside the judgment because Jacqueline had him sign the agreement and the amendment converting it into a marital settlement agreement while knowing he was under psychological care and did not have the mental capacity to make such decisions. David refers to the finding made by the Legislature in Family Code section 2120, subdivision (b): "It occasionally happens that the division of property or the award of support, whether made as a result of agreement or trial, is inequitable when made due to the nondisclosure or other misconduct of one of the parties."

David supports his version of events by citing to attachments to his July 2012 declaration, which was submitted in support of his motion for reconsideration. The attachments are printouts of text messages exchanged between David and Jacqueline in August 2010.

Appellant has the burden of demonstrating prejudicial error. (*Denham v. Superior Court*, *supra*, 2 Cal.3d at p. 564.) To carry that burden, an appellant must present an

13.

adequate record of the trial court proceedings.  In this context, "adequate" means a record that contains all of the information necessary to assess the particular error asserted by the appellant.  (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296.)  When an appellant disagrees with a trial court's evaluation of the evidence, the appellant must provide the appellate court with a complete record of that evidence.  (E.g., *Stasz v. Eisenberg* (2010) 190 Cal.App.4th 1032, 1039.)

In this appeal, David has not included a reporter's transcript, or a suitable substitute, of the oral testimony presented to the trial court.  This omission precludes this court from examining all of the evidence presented to the trial court.  Because the oral testimony might have supported the trial court's decision to reject David's claims of intrinsic and extrinsic fraud, we (like the court in *Stasz v. Eisenberg*, *supra*, 190 Cal.App.4th 1032) must conclude that the trial court's decision is correct.

Furthermore, the record presented by David does not provide the basis for the following statement by the trial court:  "Further[,] in light of [David's] altering of the document before it was filed with the court[,] the court sees no equitable reason to grant relief as well."  This statement may have been intended to address the equities, which are mentioned in Family Code section 2120, subdivision (b) in connection with the phrase "other misconduct of one of the parties."

In short, the trial court appears to have found that the equities did not favor David because he altered the agreement before it was filed with the court.  Under California law, a party who seeks equity must also do equity.  (*Quick v. Pearson* (2010) 186 Cal.App.4th 371, 380.)  The equitable doctrine of "unclean hands" precludes the possibility of equitable relief to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief.  (*Ibid.*)  This doctrine provides a second, independent ground for rejecting David's argument that the trial court committed prejudicial error when it ruled against David's claim of fraud.

14.

IV.    CAPACITY TO FORM A CONTRACT

David contends that the marital agreement and the subsequent modification that converted it into a marital settlement agreement should be set aside because of his unsound mind.

A.    Principles of Contract Law Concerning Mental Capacity and Consent

Under California law, the formation of an enforceable contract requires (1) parties capable of contracting, (2) their consent, (3) a lawful object and (4) sufficient consideration.  (Civ. Code, § 1550.)  Persons of unsound mind are not capable of contracting.  (Civ. Code, § 1556.)[3]

The question whether a person has an "unsound mind" is intertwined with the concept of consent because the parties' consent to the contract must be free.  (Civ. Code, § 1565.)  The consent or assent essential to the existence of a contract cannot be given freely by a person unless that person is endowed with such a degree of reason and judgment as will enable him or her to comprehend the subject of negotiation.  (*Jacks v. Estee* (1903) 139 Cal. 507, 512-513.)

Pursuant to Civil Code section 38, a "person entirely without understanding has no power to make a contract of any kind, but the person is liable for the reasonable value of things furnished to the person necessary for the support of the person or the person's family."  In addition, a "contract of a person of unsound mind, but not entirely without understanding, made before the incapacity of the person has been judicially determined, is subject to rescission …."  (Civ. Code, § 39, subd. (a).)

B.    Analysis of David's Claim of Error

In its statement of decision, the trial court indicated that it saw no reason to undo the parties' agreement even though, in retrospect, David considered it a bad deal.  Under

_____

[3] The capacity of a person of unsound mind to form a binding contract is addressed in sections 38 through 41 of the Civil Code.  (Civ. Code, § 1557, subd. (b).)

15.

the rules of law set forth in *In re Marriage of Arceneaux*, *supra*, 51 Cal.3d at pages 1133 to 1134, we are required to infer that the trial court found David had the requisite mental capacity at the time the agreement and the amendments were signed. Furthermore, this implied finding of fact regarding David's mental capacity withstands a challenge for lack of substantial evidentiary support because the appellate record does not include the oral testimony of the parties. Under applicable rules of law, we are required to presume that the omitted testimony contains evidence that adequately supports the trial court's decision. In summary, David has failed to carry his burden of affirmatively demonstrating reversible error on this ground.

V.  AMBIGUITY OF MARITAL SETTLEMENT AGREEMENT REGARDING IMPROVEMENTS

David contends that the marital settlement agreement is ambiguous because it does not include $947,000 of improvements that David made to the residence that was Jacqueline's separate property.

In its May 4, 2012, minute order, the trial court addressed this aspect of the agreement by (1) acknowledging that David built an addition to the residence owned by Jacqueline, which substantially increased the size of the house, and (2) stating that the parties' agreement provides that David would have no claim on either the residence or the improvements made by him to the residence. Thus, the trial court did not consider the agreement was ambiguous on the point now raised by David.

David's argument, which is not entirely clear so it is quoted here verbatim, asserts: "The agreement only has spate property of Jacqueline to be land that she had prior to marriage and the amount she paid for such property." The word "spate" probably is a typographic error and was intended to be "separate," with the reference being to the separate property of Jacqueline listed in Exhibit D to the agreement. That exhibit lists four parcels of "real property" that Jacqueline acquired in the first half of 2004. Contrary

16.

to the assertion made in David's appellate brief, the exhibit to the agreement does not use the term "land."

Civil Code section 658 provides that real property consists of land; that which is affixed to land; that which is incidental or appurtenant to land; and that which is immovable by law, with certain exceptions. Similarly, Black's Law Dictionary (8th ed. 2004) defines "real property" as "[l]and and anything growing on, attached to, or erected on it, excluding anything that may be severed without injury to the land." (*Id*. at p. 1254.)

Based on these definitions, we conclude that the agreement's reference to "real property" is not ambiguous as to whether improvements made to the parcels listed as Jacqueline's separate property were covered by the agreement. The term "real property" clearly includes such improvements and, therefore, the trial court did not err when it interpreted the agreement in that manner.

## VI.    PREMATURE JUDGMENT

David contends that the trial court erred by issuing its May 4, 2012, ruling concerning the enforceability of the agreement prior to the date set for the hearing. David asserts that the court set April 23, 2012, as the hearing date and the parties stipulated to change the date of the hearing from April 23, 2012, to May 21, 2012. David argues that the May 4, 2012, ruling deprived him of the opportunity to present the court with evidence he discovered near the end of April.

The appellate record does not contain a copy of the stipulation to continue the cause until May 21, 2012. The only reference in the record is in the copy of the docket, which includes an entry for a "stipulation to continue & order" filed on April 23, 2012. Other than a reference to the new hearing date, the terms of the stipulation are not described in the docket.

17.

Because we cannot ascertain the contents of the stipulation and order, we cannot determine whether the trial court's issuance of the May 4, 2012, decision violated the terms of the stipulation and order. As a result, David has failed to present this court with an appellate record that affirmatively demonstrates that the trial court erred when it filed the May 4, 2012, decision.

## VII.   CONCLUSION

David has failed to carry his burden and demonstrate that the trial court committed prejudicial error on the grounds raised in this appeal.

**DISPOSITION**

The judgment and orders of the trial court are affirmed. Costs on appeal, if any, are awarded to Respondent.

_____
Franson, J.

WE CONCUR:


_____
Kane, Acting P.J.


_____
Peña, J.